## CURTIN v. MORONEY et al.

No. 15759—Opinion Filed Oct. 6, 1925.

Rehearing Denied May 11, 1926.

**1. Partnership—Renunciation by Partner as Forfeiting Later Profits.**

Under section 8116, Comp. St. 1921, where a partner renounces the partnership and gives notice of his renunciation, he cannot claim any of its subsequent profits.

**2. Trial—Special Findings and Conclusions of Law—Refusal on Nonessential Issues.**

Is is not error for the court to refuse to make special findings of facts and conclusions of law by request on issues nonessential to rights of the parties.

**3. Partnership—Right of Partner to Compensation for Services.**

Under section 8114, Comp. St. 1921, "a partner is not entitled to any compensation for services rendered by him to the partnership", but where the parties otherwise agree, the provisions of this section are waived.

**4. Appeal and Error—Review—Presumption of Regularity—Duty to Point Out Error.**

Error is never presumed against the trial court, but must be pointed out and made to appear by the party complaining, and where error is alleged and the argument in the brief is indefinite and obscure, and the error does not appear on the face of the record, this court will not indulge a presumption against the record.

**5. Partnership—Accounting — Assets and Profits—Deduction for Price of Car Worn Out.**

In an action for an accounting, where it appears from the record that one item of the assets consisted of an automobile valued at $700, and was used and worn out in the service of the partnership and disposed of in exchange for another car at a value of $175 and this value is charged to the partnership and the $700 value is credited to or charged off of the assets, it is not error for the court to deduct from the net profits in the account the $700 value of the said car.

**6.** Same as syllabus numbered 2 above stated.

**7. Partnership—Action Between Partners—When Refusal of Receivership Proper.**

It is not error for the court to refuse to appoint a receiver in an action between partners under section 518, Comp. St. 1921, where it is not shown that the property involved is in danger of being lost, removed, or materially injured.

**8. Appeal and Error—Harmless Error.**

An assignment of error that fails to show any resulting injury to plaintiff, or that any of his constitutional or statutory rights were violated, is not sufficient to work a reversal of the judgment.

**9. Partnership—Delay in Winding Up Affairs After Dissolution—Findings—Consistency.**

Where the court finds that the partnership business should have been liquidated immediately by the defendant members of the partnership after same was dissolved, and also finds that plaintiff took no steps or made no arrangements with his partners for winding up the partnership affairs, and further finds that neither party is at fault for delay in winding up the partnership affairs, and the evidence sustains the findings, error cannot be predicated upon said findings on the ground of inconsistency.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by J. E. Curtin against M. F. and J. P. Moroney for a partnership accounting. Judgment for plaintiff for the accounting, except for profits made after the dissolution, which was denied, and plaintiff brings error. Affirmed.

C. B. McCrory and John H. Alsop, for plaintiff in error.

A. L. Emery, for defendants in error.

Opinion by THREADGILL, C. This action was commenced January 15, 1924, by J. E. Curtin, plaintiff in error, as plaintiff, against M. F. and J. P. Moroney, defendants in error, as defendants, for a partnership accounting. For convenience the parties will be referred to as they appeared in the trial court.

Plaintiff alleged, in substance, that he and defendants had been engaged in a partnership business of drilling oil and gas wells in the Okmulgee district since October 3, 1921, under the name and style of the Moroney Drilling Company; that it was the agreement of the parties that he should put in $1,250, part cash and part profits from the business, and perform labor in tool dressing and drilling at the usual and customary wages paid in the district, and have one-fourth of the profits of the partnership; that he put up $1,250 and engaged in the work until December 26, 1922; that at that time, owing to "a serious lack of understanding and harmony between the parties", as to the disposition of the partnership property and assets, "plaintiff quit working for said partnership"; that said partnership has continued to drill oil and gas wells up to the present time (January 15, 1924); that the lack of harmony was continued; that plaintiff has often demanded of each of the defendants the dissolution of the partnership, the winding up of its affairs, and an accounting to him for his interest in the assets and property of the partnership, yet they have "failed and refused to do so"; that the assets of the partnership consist of about two strings of drilling tools, one Reo truck, one Nash touring car, and cash on hand and account receivable in a large sum, and other property, as plaintiff is informed and verily believes. Plaintiff further states that he has been wrong-

fully excluded by defendants from the management of the partnership affairs and is not allowed to examine the books of the company; that plaintiff believes the assets of the partnership are in danger of being materially injured and that a receiver should be appointed to take over the partnership property. The prayer is for dissolution of the partnership, for an accounting, for the property to be sold and any debts owing paid, and the surplus, if any, divided between the plaintiff and defendants according to the amounts found due each of them; that defendants be enjoined from having anything to do with partnership property pending the action, and that a receiver be appointed to have charge of the property under the direction of the court.

Thereafter, on March 6, 1924, defendants filed their answer in which they said, in substance: First, a general denial; second, they admit the partnership and state that prior to the partnership, M. F. Moroncy was the sole owner of the drilling tools, and on account of the fact that plaintiff was his brother-in-law and J. P. Moroney was his nephew, he agreed to, and did, sell to them a one-half interest in said tools for $2,500; that said J. P. Moroney paid his half of this amount in cash and plaintiff paid only the sum of $360 in cash, and the balance of his part was paid out of the profits made by the use of said tools in drilling; that as a further consideration for the said one-half interest in the said tools, it was agreed that plaintiff and J. P. Moroney should "work on said tools and take care of them"; that J. P. Moroney complied with his part of the agreement, while the plaintiff wholly breached his part, since about December 26, 1922; that defendants were not at fault for plaintiff's breach of the said contract and agreement. Defendants specially deny that there was a serious lack of understanding and harmony between the partners, as alleged by plaintiff, but state the facts to be that plaintiff quarreled with a pumper on a lease conducted by an oil and gas company in no wise connected with the partnership, and on account of his inability to get along with the pumper, he quit work. Defendants further allege that during the existence of the partnership, the said tools were used in drilling nine wells, six being drilled previous to the time that plaintiff quit, and plaintiff received his part of the profits, the same being the sum of $8,573.03, and also received his wages as tool dresser amount-

ing to $1,134; that there were profits on the three wells drilled after plaintiff quit, but plaintiff is not entitled to share in these profits because of his breach of the agreement. Defendants admit that they owe the plaintiff for one-fourth of the value of the tools and are willing for the court to order the tools sold and plaintiff be given one-fourth of the proceeds of the same. Defendants specially deny insolvency and that they are misusing the partnership property. They ask for judgment according to the facts stated at the cost of the plaintiff. There was a reply consisting of a general denial.

At the February, 1924, term of court in March, the issues were tried to the court and judgment given in favor of plaintiff for a one-fourth interest in all the partnership property and assets, except profits made after December 26, 1922, and from this judgment plaintiff has appealed, with 39 assignments of error, asking for a reversal.

The material facts in the case, as disclosed by the record, are substantially as follows: The plaintiff was a brother-in-law to defendant M. F. Moroney, being the brother of his wife, and defendant J. P. Moroney was a nephew of said M. F. Moroney; the three decided to form a partnership for drilling oil and gas wells. Said M. F. Moroney owned a string of drilling tools which he valued at $5,000, and was a practical driller, and the other two had experience in drilling and in dressing tools. It was agreed that plaintiff and J. P. Moroney should pay $1,250 each for a one-half interest in said tools, should have a one-fourth interest each, should look after the tools, and do the work of keeping them dressed, and receive the customary wages for such employment, and M. F. Moroney should have the general management of the partnership affairs, as well as the actual drilling, and receive a salary for his services and for a one-half interest in the partnership, and whatever profits were made in the general scope of said partnership to be divided among them according to their respective interests. Said J. P. Moroney paid his part of the $2,500 in cash and plaintiff paid $260 in cash and the balance in the profits made by the partnership. They drilled six wells from the time they entered into the agreement October 3, 1921, to December 26, 1922, and plaintiff's part of the profits amounted to $8,-573.03, and $1,134 as wages, which sums were duly paid him. The Moroney brothers, composed of M. F., J. P., and J. J., Tom

and Ed Moroney, and other members of the Moroney family, owned an oil and gas lease and adjoining the property of the North Baltimore Oil & Gas Association, and adjoining the lease of the North Baltimore, the said North Baltimore Oil & Gas Association and the Anglo-Texas Oil Company jointly owned the lease. The holder of this lease was one George Hallman and he had employed a man by the name of Howard as pumper on the lease. This pumper and his wife ran a boarding house in the neighborhood, but had no connection with the partnership involved in this action, and the lease owned by the Moroney brothers. A few days before Christmas, 1922, an oil and gas well had been brought in by the partners on the Moroney brothers lease. The oil was being run into two steel tanks, and in addition they had one new wooden tank for the same purpose. On Christmas Day the partners saw that the steel tanks would be full before the next morning, and, desiring to be in town next day for Christmas, one of them asked the pumper, Howard, who was an employe of the North Baltimore and Anglo-Texas Oil Companies, to run the oil into the wooden tank after the steel tanks were filled. The request was not made by the plaintiff, as he was already in town. On Christmas night, by the assistance of his wife holding a light for him, this pumper, as a matter of accommodation to the Moroney brothers, turned the oil from the steel tank into the wooden tank. The wooden tank leaked, but neither the pumper nor the owners of the lease knew that it leaked. Next morning it was discovered that the wooden tank had leaked and about 20 barrels of oil had run out on the ground. The plaintiff, being present next morning and seeing what was done, had some harsh words with the pumper about this leakage, which resulted in a fight between them, and plaintiff returned to Okmulgee and refused to work any more. He said that his brother-in-law, M. F. Moroney, had informed him that he had to get along with the pumper or quit the work, and that his said brother-in-law owed him an apology, and he would not return to work without he made the apology. The partners had been boarding at the pumper's boarding house and M. F. Moroney said that he admonished the plaintiff, as well as others employed in the work, that he must get along with the pumper because the pumper kept the boarding house and to prevent the very thing that happened after the tank leaked, but he denies that he said

if plaintiff did not get along with him he had to quit. The partners tried to get the plaintiff to return to work, even his sister tried to persuade him to go back to work, but he refused to do so. Thereafter, the other two members of the partnership continued the work of drilling. They drilled the well that was contracted for before plaintiff quit work and two wells that were contracted for after he quit. They made profits out of the three wells, but refused to pay plaintiff any part of these profits.

1. Plaintiff's first assignment of error involves the question as to whether or not the court committed error in refusing to give him one-fourth of these profits. It may be conceded that plaintiff breached his agreement to assist in the work of dressing and looking after the drilling tools and the work of drilling, and voluntarily withdrew from the partnership December 26, 1922, and made this fact well known to the defendants. The court finds that the plaintiff voluntarily withdrew from the partnership on this date and without fault on the part of the defendant, and the evidence is sufficient to sustain this finding. There is no contention that plaintiff did not quit the partnership on this date and made his act in so doing emphatic to the defendants, and although they tried to persuade him to return to the work he had agreed to do and continue his part in the partnership, he refused to do so. It may also be conceded that there was an effort made at a settlement between the partners. Defendants offered plaintiff his money back on the tools, which he refused. There were efforts at a compromise which failed; defendants continued the work of the partnership and drilled three wells at a profit with the tools that plaintiff owned an undivided one-fourth interest in. It may also be conceded that the partnership was one at will.

The court, applying the law to these facts, held that plaintiff was not entitled to any profits made after he withdrew from the partnership. Plaintiff contends that this was an error and calls our attention to the rule stated in Durbin v. Barber, 14 Ohio, 311; Bates on Partnership, vol. 2, sec. 794, p. 842; and 30 Cyc. 688, to the effect that if a court of equity fix upon the time at which a partnership shall be considered as having determined, and it appear that the capital of one partner was subsequently employed by another, who continued to carry on the business, the former is entitled to such proportion of the

profits as his capital thus retained bears to the whole capital. We think this is the general rule, and in the absence of any statutory provisions to the contrary, is supported by the great weight of authority. but the rule is not applicable to the facts of the case at bar in this state because we have a statute to the contrary. Section 8116, Comp. St. 1921, provides:

"After a partner has given notice of his renunciation of the partnership, he cannot claim any of its subsequent profits, and his copartners may proceed to dissolve the partnership."

This statute settles the question involved against plaintiff's contention, and we must therefore hold that plaintiff was not entitled to judgment for profits under the facts as above stated.

2. In the second place plaintiff contends that the court committed error in refusing to find the net profits of the use of the partnership assets over the legitimate expenses for that period of time, after December 26, 1922, that the defendant continued to use the partnership assets. We fail to see any error here, since the court correctly held that plaintiff was not entitled to any of the profits made after he withdrew from the partnership. The rule applicable is stated in the case of McAlpine v. Hixon, 45 Okla. 376, 145 Pac. 386, as follows:

"This should be the rule in any case where the issue was submitted to the court without a jury, and the record is such, either from want of facts or that the evidence shows such a conclusive state of facts sustaining the judgment which would have warranted the court in directing a verdict in favor of such party, had the cause been tried to a jury. Or, to state the rule in another way, where the record discloses such state of facts that no practical benefit would result from it to either party, had the court made separate findings of fact and conclusions of law, then this court should not reverse the case."

3. In the third place, plaintiff says the court committed error in allowing the defendant M. F. Moroney an item of salary of $1,500 before, and $3,000 after, dissolution of the partnership. It is urged that these items were illegally allowed under section 8114, Comp. St. 1921, and plaintiff was illegally deprived of one-fourth of these items by the judgment. Since we have held that plaintiff was not entitled to any of the profits made after December 26, 1922, it is not necessary to consider the complaint as to the $3,000, which was paid to said defendants out of profits after

the dissolution. As to the $1,500 paid for services before dissolution, it appears from the record that the members of the partnership, by common consent, were to receive compensations for their services. The record shows that J. P. Moroney and plaintiff, by agreement of the partners, were to, and did, receive customary wages for their services as tool dressers, and the books show that M. F. Moroney received compensation for his services in the general management of the entire business, and no objections were made to this compensation until after the dissolution of the partnership. It appears that this question was determined by the court at the time the complaint was made during the announcement of the findings as shown by the following colloquy between plaintiff's attorney and the court:

"Judge McCrory: Plaintiff requests that the court determine and make a finding as to the extent of the actual partnership income, less the actual legitimate expenditures of expenses from October 31, 1921, to December 26, 1922. The Court: There is no controversy as to the partnership up until the date he quit. Judge McCrory: The books contain some items we think are no part of the expense. The Court: Supposing it did. The question was not raised that he has not agreed to it. There is nothing in the testimony as to any dispute for anything up to the afternoon Ed walked off, whatever was done before, whether it should or should not have been, the parties agreed to it at that time."

We think the court was correct. The partners worked harmoniously in conducting the business of the partnership and drew compensation by common consent, and plaintiff knew that defendant M. F. Moroney was receiving a salary, as he knew that J. P. Moroney and himself were receiving wages, and he made no objection till after December 26, 1922, and under this state of facts the provisions of the statutes invoked are waived.

4. In the fourth place, plaintiff contends that the court committed error in deducting from the net profits of the partnership the item of depreciation. We cannot understand from plaintiff's brief just what item of depreciation is meant. He speaks of a certain depreciation on the tools made by the bookkeeper and another depreciation at a sheriff's sale, and then he speaks of all the assets, tools, automobiles, and moneys of the partnership, and says that if this property had been in the hands of a receiver, or other third party, then each of the parties "would have properly suffered the act of depreciation and suffered

depreciation but once, instead of the plaintiff in error suffering two depreciations, and defendants in error being allowed to cut down the profits in which plaintiff in error participated by the amount of the estimated depreciation, which they might have estimated at $12,000, or other amount up to the valuation put on the tools, as well as the $5,124.88, which they did estimate." It may be clear to the plaintiff, but the argument is not clear to the court. We have examined the record and failed to find the error complained of, and we cannot say from the complaint stated and argument of plaintiff's brief, that the court committed error, and error cannot be presumed, but must be made to appear.

5. In the fifth place, plaintiff contends that the court committed error in deducting from the net profits of the partnership the item "cost of Dodge car sold for $700". This Dodge car was one of the assets of the partnership in its formation and was valued at $700. It was soon worn out and was traded for a Chevrolet, which they valued at $625, and they used it until it was about worn out, and then sold it to plaintiff for $200, which car he thereafter traded for a Nash touring car and which he used on a wedding trip. In the matter of bookkeeping, under the head of income, the sale of the Dodge car is entered at $175 and the sale of the Chevrolet car is entered at $200, and both cars were checked up as expenses, which left a value of $375 in income instead of the value of the two cars. Under these facts we cannot see any ground for the complaint. We think the court was correct in making the deduction.

6. Plaintiff further complains that the court committed error in refusing to make separate findings of facts and conclusions of law. It appears from the record that the complaint goes to two items: One for $1,500, which was drawn by M. F. Moroney as salary before plaintiff quit the partnership: and the other $3,000, which was drawn out of the partnership account in the bank and placed to the individual account of M. F. Moroney, after the dissolution of the partnership and about the time this action commenced, and to prevent plaintiff from "tying up the money" by a receivership in the lawsuit. There was no issue of fact as to these two items. It was conceded by all the partners what the amounts were, and as to the first item, the evidence shows that plaintiff made no objection to M. F. Moroney's receiving it until he quit the partnership, and the record further shows that at the time it was so applied, the plaintiff and the other defendant were receiving compensation for their services in the partnership. As to the other item, there was no dispute as to the amount and the disposition of it, and the purpose of checking it from one account to the other, and since the court held that plaintiff had no interest in this item, it could not be involved in the action. There was no issue of facts necessary to the court's findings in these two items, and in the case of Grant v. Mathis, 96 Okla. 65, 220 Pac. 331, the court held it was reversible error to refuse to make findings of fact upon the trial of questions of fact by the court, yet error cannot be based upon the nonexistence of such issue of facts. In other words:

"The law never requires a useless thing be done, and where no issue of fact is presented, findings of fact by the trial court could result in no practical benefit and therefore the failure of the trial court so to do would not affect any substantial right of the parties, and under section 2822, Comp. Stat. 1921, such failure would not be sufficient grounds for reversing the case." Grant v. Mathis, supra.

7. Plaintiff further contends that the court committed error in refusing to appoint a receiver to take charge of the assets of the partnership and convert the same into money before adjudicating the final amounts belonging to each partner. Plaintiff argues that if the assets had been sold and turned into money before judgment as to the amount each was to receive was rendered, it would have shown the court the error of the allowance of the item "depreciation" on the tools. We think we see plaintiff's point, but we see no resulting injury. The sheriff was ordered by the court to sell the tools, which had increased from one string to nearly two strings since the partnership commenced, and plaintiff was awarded one-fourth of whatever they sold for. It would therefore make no difference as to the depreciation entered on the books of the partnership, or the depreciation noted in the sheriff's inventory and appraisement, since, whatever they brought at the sheriff's sale to the highest and best bidder for cash, plaintiff was to have one-fourth of the money. As a matter of fact, when the tools were sold, plaintiff bid only $1,000 for them, and the defendants bid $2,000 and bought them. We cannot see where plaintiff was injured by the book depreciation, since he himself did not bid as much for the tools as they were valued by the books of the partnership and the appraisement

of the sheriff, and the defendants bid twice as much as he did, and bought them. The record shows that the assets of the partnership were sold by the sheriff to the highest and best bidder for cash, after due notice given, and without objection on the part of the plaintiff, and he was paid his one-fourth interest in money and receipted for same, and we fail to see how any injury resulted from the failure of the court to appoint a receiver or to withhold final judgment until after the sale was made. We do not see any merit in plaintiff's contention.

8. Plaintiff's eighth assignment of error is that the court erred in including the items of $2,500 and $600, as being part of the partnership assets, whereas it should have been adjudged that the defendants in error are collecting said funds in trust for the plaintiff in error, as proceeds from a transaction in no manner connected with the partnership. The record shows that these two items grew out of the plaintiff's interest in the 40-acre lease, which was owned by the Moroney brothers, and on which plaintiff's partnership drilled the test well for an undivided one-half interest in the lease. This gave plaintiff an undivided one-eighth interest in the lease. The lease was sold after plaintiff quit the partnership for $85,000, $55,000 paid in cash, and the balance to be paid in the "oil run." Plaintiff joined in the assignment of the lease, received his part of the cash paid, and $650.80, his part of the oil run payment up to the time of this appeal, and we cannot see what difference it made to him as to whether these items are included in the judgment of the court or not or what difference it makes to him whether the items belong to the partnership assets or to an individual matter with him apart from the partnership, since he got the same money and his rights are no more injured by the judgment than by his own acts in joining in the assignment of the lease and receiving payment for the same.

9. Plaintiff further complains that the court committed error in finding that the defendants in error were not at fault in failure to settle the partnership affairs within a reasonable time after dissolution. This complaint goes to the sixth general finding of the court, which reads as follows:

"The court finds that neither the plaintiff nor either of the defendants was at fault, or in any way to blame for the fact that the partnership settlement was not taken care of immediately after the dissolution of the partnership, for simply failing to agree upon the disposition of the partnership property was without particular fault of any one."

In the fifth findings, the court says, in substance, that the partnership business and property should have been liquidated immediately after December 26, 1922, but the plaintiff took no steps and made no arrangements with his partners for such purpose until in February, and that the partners failed to make a settlement. We do not think the finding is against the weight of the evidence. Plaintiff had quit the partnership and had abandoned the property, which had been committed to his keeping or management with J. P. Moroney, and he was as much to blame for the delay in winding up the affairs of the partnership as the other two, if any one was to blame, rather than the circumstances of the case. We think it is reasonable to infer from the evidence that the delay on the part of the defendants was in the hope that the plaintiff would return to work and renew his relations with the partnership, rather than for the purpose of advantage over the plaintiff, and plaintiff delayed, expecting that his brother-in-law, M. F. Moroney, would make an apology to him relative to the difficulty had with the pumper. There was no advantage sought by either party, and none obtained; and there is no injury shown by the delay.

10. Plaintiff's tenth assignment, discussed in his brief, appears to be a recapitulation of his contentions as to the account and the several items and amounts he should have received in the settlement of the partnership business. We think we have covered his whole case, and it would serve no useful purpose to pursue the discussion further, but would extend this opinion to a considerable length, which is already too long.

We think the judgment of the court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 30 Cyc. pp. 451, 689. (2) 38 Cyc. p. 1969. (3) 30 Cyc. p. 448; anno. 17 L. R. A. (N. S.) 385; L. R. A. 1917F, 575: 20 R. C. L. p. 877; 3 R. C. L. Supp. p. 1107; 4 R. C. L. Supp. p. 1382. (4) 4 C. J. p. 732, § 2662. (5) 30 Cyc. p. 741. (6) 38 Cyc. p. 1969. (7) 30 Cyc. p. 727. (8) 4 C. J. pp. 908, § 2878, 912, § 2879. (9) 30 Cyc. p. 737.