**Annie Lee CHAPMAN, now Cole, Appellant,**

v.

**Sarah Nan CHAPMAN, Executrix of the Estate of Sam A. Chapman, a/k/a Sam Allen Chapman, Appellee.**

**No. 57233.**

Supreme Court of Oklahoma.

Dec. 18, 1984.

ly was not intended to, and does not, affect *any* existing rights in a "proceeding begun".

Alan Agee, George E. Meisel, Garvin, Agee & Meisel, Pauls Valley, for appellant.

Russell G. Jones, Lawton, for appellee.

OPALA, Justice.

The issue presented on certiorari is whether any one of the plaintiff's [wife's] three claims against the former husband's estate can withstand a challenge by demurrer to her amended petition. We answer in the affirmative and hold that the pleading in question states a claim only insofar as it seeks enforcement of that provision in the divorce decree which requires the decedent to maintain in force for her benefit a life insurance policy.

The wife and the decedent [husband] were divorced by an Oklahoma decree on October 25, 1965, after 32 years of marriage. The terms of a pre-divorce property settlement agreement were incorporated in that decree. So far as pertinent here, the agreement provided that the husband (a) would maintain an insurance policy on his life and designate his former wife as beneficiary of one-third of its proceeds and (b) would assign the balance of a note and mortgage to his wife in lieu of any interest she might have in any spousal assets not listed in the agreement.[1] Both parties later remarried other persons.

According to the allegations, the decedent, without the wife's knowledge until after his death, (a) cashed in the life insurance policy, keeping the proceeds for himself, and (b) failed to assign to her the note and mortgage, retaining all the payments collected thereon.

The husband died on December 12, 1978, and the wife pressed a claim against his estate for the principal balance due upon the note, with interest thereon, and one-third of the value of the life insurance policy. When her claim was rejected, the wife sued, stating in essence three separate causes of action. She alleged that: (1) the

---

1. The divorce decree provides in pertinent part: " * * * In addition thereto, it is also agreed that the First Party [wife] has requested and hereby accepts as full share of any *unknown, unlisted* or *overlooked* property, real or personal, including any interest in Lot 2, Block 6, Heinz Second Addition to the City of Lawton, Oklahoma, and in full settlement and payment for any interest in any such property or assets, that certain promissory note for $10,000.00 dated January 27, 1965, together with the real estate mortgage which secures the same, from J.A. Tompkins and Barbara Tompkins, husband and wife, more fully described in Paragraph 1, B, 30 above, and the Second Party [husband] agrees to endorse said note and assign said mortgage to the First Party.

It is also agreed that the Second Party shall maintain at his expense Standard Life and Accident Insurance Policy No. LP 9452 covering the life of the Second Party, and to maintain the First Party as a beneficiary of one-third of the value of said policy. * * * " [emphasis added]

husband intentionally and wilfully secreted spousal assets and failed to disclose them at the time of the divorce; (2) failed to maintain in force the life insurance policy designating her as beneficiary of one-third of its value and (3) failed to endorse the note and assign the mortgage. The primary relief sought by the wife in her amended petition was the vacation of the property settlement provisions of the decree. In the alternative, she sought a judgment for the amount of the principal balance due her upon the note with interest thereon and one-third of the value of the insurance policy.

The trial court sustained the estate's demurrer to the wife's amended petition, and the Court of Appeals affirmed. We vacate the Court of Appeals opinion, reverse in part and affirm in part the trial court's judgment and remand the cause with directions.

■■■ While the principal relief the wife sought sounded in derogation of the divorce decree, her alternative plea prayed for enforcement of some of its terms. Her request for the latter is affected by 12 O.S. 1981 §§ 731 et seq. The judgment becomes dormant if no execution issues thereon within five years of its rendition. 12 O.S. 1981 § 735. When, as here, judgment is sought to be vacated for fraud, the claim is governed by 12 O.S. 1981 § 1031(4). It must be brought within *two years after the judgment.* 12 O.S. 1981 § 1038. A vacation claim instituted *more* than two years after judgment—by an independent suit in equity rather than in the original case— *must be predicated upon extrinsic fraud*

practiced in obtaining the judgment.[2] The equity suit may be maintained *only* if it is commenced within two years from the date fraud was discovered. 12 O.S. 1981 § 95(3).[3]

## I

## THE WIFE'S CLAIM IN DEROGATION OF THE DIVORCE DECREE

Her amended petition alleged: (a) the husband handled all of the spousal property and assets; (b) in drafting and negotiating a property settlement he occupied a position of trust; (c) he owed a fiduciary duty to disclose all of their jointly acquired assets; and (d) after the husband's death the wife discovered that the deceased had not disclosed all of their conjugal assets but instead knowingly, wilfully and wantonly concealed from her some of their spousal property. Invoking the trial court's equitable powers, the wife sought vacation of those provisions in the decree by which the property settlement had been judicially approved.

■■ This claim, brought some 15 years after the divorce had been granted, was commenced long after the expiration of the two-year time limit in 12 O.S. 1981 § 1038. The wife can prevail in her equity suit *only* if her amended petition states a timely cause of action for extrinsic fraud.[4] To withstand a demurrer, her pleading must allege with particularity the material facts constituting the husband's fraudulent conduct.[5]

■■ *Extrinsic* fraud differs from *in-*

---

**2.** *Phillips v. Ball,* Okl., 358 P.2d 193, 197 [1961]; *Caraway v. Overholser,* 182 Okl. 357, 77 P.2d 688, 691 [1938].

**3.** The terms of 12 O.S. 1981 § 95(3) provide in pertinent part:
"Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
     *     *     *     *     *     *

Third. Within two (2) years: ... an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of fraud. * * * "

**4.** *Phillips v. Ball, supra* note 2; *Caraway v. Overholser, supra* note 2, 77 P.2d at 691.

**5.** *Ward v. Thompson, infra* note 8, 237 P.2d at 571.

*trinsic* fraud.[6] The former consists of (a) any fraudulent conduct of a successful party (b) which was practiced *outside* of an actual adversary trial or process and (c) which was practiced directly and affirmatively on the defeated party, (d) whereby he was prevented from presenting fully and fairly his side of the case.[7] In essence, "acts which result in the court being imposed on and by which interested parties are prevented from having their interests protected constitute extrinsic fraud that vitiates a judgment".[8] The fraud alleged by the wife consists of the husband's concealment of spousal property in the course of pre-divorce settlement negotiations which operated to induce her inaction or to make her forego further inquiry during the ensuing court proceedings.

■ The record is crystal-clear that the wife agreed to accept "as full share of any unknown, unlisted, or overlooked property, real or personal ... in full settlement and payment for any interest in such property or assets" a promissory note, together with real estate mortgage securing it. The amended petition is devoid of any allegation as to specific acts of fraud, practiced by the husband outside the adversary process in the divorce suit, from which we might infer that the wife had been either deprived of an opportunity to ascertain the extent and value of spousal assets or pre-vented from making an inquiry into their nature. The record before us is clear that throughout the divorce proceedings the wife had been assisted by her own counsel. Her failure to discover all the spousal assets is nowhere ascribed to the husband's extrinsic fraud. Rather, it is sought to be attributed to her own inaction in reliance on a pre-existing fiduciary relationship with him. Pleading a fiduciary status that subsisted between married parties *before* the divorce will not relieve the wife of her duty to spell out the specific acts on which extrinsic fraud is to be rested. Parties locked in forensic combat, with each represented by separate counsel, are regarded in law as standing in an adversarial posture. Viewing the wife's pleading in a light most favorable to her, as we are bound to do, we are constrained to conclude that the husband's alleged concealment of spousal assets does not rise above *intrinsic fraud* —one perpetrated *within* the course of adversary proceedings. The character of his alleged conduct may not be distinguished from either perjured testimony or any other act of fraud committed by a suitor *in the course of* a forensic contest.[9] Since his fraud, if any, was of an intrinsic nature, § 1038 time limit operated to bar the wife's equity suit after the lapse of two years from the rendition of the divorce decree. Inasmuch as the wife failed to allege any acts of extrinsic fraud, her claim for vaca-

6. An independent suit in equity, by which a *collateral attack* is launched on a judgment will not lie for relief from *intrinsic* fraud *but only from extrinsic fraud.* Relief from the former must be by *direct attack* in the same case in which fraud was committed. Intrinsic fraud is "'... any fraudulent conduct of the successful party which was practiced during the course of an actual adversary trial of the issues joined and which had no effect directly and affirmatively to mislead the defeated party to his injury after he announced that he was ready to proceed with the trial. If during the trial the successful party urges forged instruments or perjured testimony or fails to introduce witnesses of whom he has knowledge and whose testimony would help his adversary and impair his own case, he is guilty of fraud; but it is intrinsic fraud, for relief from which application must be made to the court having jurisdiction of the issues joined and tried'". *Calkin v. Wolcott*, 182 Okl. 278, 77 P.2d 96, 100 [1938]; *Phillips v. Ball, supra* note 2 at 197.

7. *Calkin v. Wolcott, supra* note 6, 77 P.2d at 100; *Phillips v. Ball, supra* note 2.

8. *Gray v. McKnight*, 75 Okl. 268, 183 P. 489, 494 [1919]; *Ward v. Thompson*, 111 Okl. 52, 237 P. 569, 571 [1925]; *Schulte v. Board of Commissioners of Pontotoc County*, 119 Okl. 261, 250 P. 123 [1926] (syllabus 3); *Steil v. Leverett*, 133 Okl. 300, 272 P. 412 [1928] (syllabus 2); *Dill v. Stevens*, 141 Okl. 24, 284 P. 60, 64 [1930]; *Terrell v. Gotcher*, 197 Okl. 650, 174 P.2d 229, 230 [1946].

9. *Calkin v. Wolcott, supra* note 6 77 P.2d at 100.

tion was correctly held to have been barred.

■ The wife also contends on appeal that a fiduciary relationship existed between her and her husband when they entered into the pre-divorce agreement and that the statute of limitations does not start to run in an action for fraud until there has been a clear repudiation of the trust. We can find no merit in this argument. First, the essential elements of extrinsic fraud were not pleaded. Secondly, the decree operates effectively to extinguish all pre-existing rights of the parties arising out of their former marital status.[10] Once the pre-divorce property settlement agreement was incorporated in the decree with judicial approval, the rights which the parties had thereunder became merged in that decree.[11] Unless there is a valid post-divorce agreement, assets acquired during coverture which are omitted from the court's division of spousal property in the decree are owned by the party in whose name title was vested before the divorce.[12] Except in cases of fraud, in which vacation relief is timely invoked, the divorce constitutes an effective bar to the claims by either party to the property of the other.

Because the wife failed to plead the essential elements of actionable extrinsic fraud, the judgment on the demurrer to her claim is free from legal error. We next turn to the wife's claims for enforcement of her decree-conferred rights to the proceeds of the life insurance policy and to the note and mortgage.

## II

## THE LIFE INSURANCE POLICY

■ Under the terms of the agreement the husband was to keep in force a life insurance policy at his expense and to maintain the wife as beneficiary of one-third of its value. In her amended petition the wife alleged that unbeknown to her the husband (a) changed the beneficiary to his second wife, (b) later cashed in the policy for its surrender value and (c) kept the proceeds for his own use.

According to her allegations, the wife's decree-conferred right in life insurance clearly was not actionable until the death of the husband. It was at that point that her claim to the proceeds of the policy became enforceable. She could not invoke any available equitable remedies during the husband's lifetime because she did not know either of the beneficiary's change or of the husband's surrender of the policy for its cash value. Her claim, made against the estate within the period authorized by 58 O.S. 1981 § 331,[13] was hence timely. The trial court erred when it rendered judgment against her upon the asserted claim for life insurance proceeds.[14]

## III

## THE NOTE AND MORTGAGE

The wife's amended petition alleged that she did not know until after her husband's death that he had retained the note and mortgage and that he collected and kept all

---

**10.** *Dickason v. Dickason,* Okl., 607 P.2d 674, 677 [1980]; *Johnson v. Johnson,* Okl., 674 P.2d 539, 543 [1983].

**11.** *Dickason v. Dickason, supra* note 10; *Johnson v. Johnson, supra* note 10; *Deweese v. Fisher,* Okl., 658 P.2d 1153, 1154 [1983]; *Shipp v. Shipp,* Okl., 383 P.2d 30, 33 [1963].

**12.** *Deweese v. Fisher, supra* note 11; *Shipp v. Shipp, supra* note 11.

**13.** The terms of 58 O.S. 1981 § 331 provide in pertinent part:
"Every personal representative must, immediately after his appointment, give notice to the creditors of the deceased, unless the notice has been given by a special administrator as provided in this title, requiring all persons having claims against said deceased to present the same ... within two (2) months from the date of the first publication of said notice ..."

**14.** When remedies in aid of execution appear inadequate, a prior judgment may be enforced in a new action founded upon it. *Davis v. Foley,* 60 Okl. 87, 159 P. 646 [1916] and *Pitchford v. Blanchard,* Okl., 503 P.2d 1270 [1972].

the installment payments. She sought judgment from the husband's estate for the amount of the note plus interest.

The wife was not without means to enforce this adjudicated spousal obligation before the husband's death. First, she could have enforced the assignment provision by contempt.[15] Secondly, she could have given notice to the obligor and demanded that he make the payments directly to her. If he refused, she could have instituted an action against him to compel the enforcement of the decree-conferred assignment. Instead, some fifteen years after the divorce, the wife brought a claim for conversion of the collected installments.

The wife contends that the divorce decree did not provide a definite time within which the husband was to make the assignment and therefore the limitation period would not begin to run until expiration of "a reasonable time" which, she asserts, is a fact that must be determined from consideration of all the facts and circumstances in the case. We find no merit in this argument. The property settlement agreement discloses that the note—payable in 60 monthly installments beginning in January 1965—would have been paid in full by January, 1970. Assuming *arguendo* the wife had a reasonable time to bring the suit, her institution of this action some *nine years after* the last payment on the note came due, cannot be viewed as timely under *any* circumstances or theories of liability.

In her amended petition the wife alleged that she did not know until after the husband's death that he had unlawfully retained the installment payments. The wife, having had knowledge of the date when the note was to mature, was also on notice of the due date for each payment thereunder. She was charged with knowledge that these payments were either in default or were being collected by the husband. Her claim, brought in 1979, reached the trial court some nine years after the last payment on the note had come due. Each installment collected and retained by the husband triggered the running of a two-year statute of limitations that governs actions for conversion. 12 O.S. 1981 § 95(3).[16] The wife's claim for all the funds collected on the note in question and wrongfully retained by the husband was clearly barred by limitations and hence demurrable.

The Court of Appeals opinion is vacated; the trial court's judgment is affirmed in part and reversed in part and the cause remanded for further proceedings not inconsistent with this pronouncement.

BARNES, C.J., SIMMS, V.C.J., and HODGES, LAVENDER, HARGRAVE and KAUGER, JJ., concur.

DOOLIN and ALMA WILSON, JJ., disqualified.

---

**15.** An order to deliver specific property, then in existence, by one who is in control of that source, is enforceable by contempt. *Potter v. Wilson*, Okl., 609 P.2d 1278, 1280 [1980].

**16.** The wife's claim to the installments collected by the husband is founded either on conversion or fraud in retaining payments belonging to her. Our discussion here is limited to her theory of recovery. We do not reach for decision the question whether another theory, with a longer limitation period, would have been available to support her claim.