FDIC, in its capacity as Receiver for First Republic Bank of Dallas, the Successor to InterFirst Bank of Dallas, Plaintiff,

CSM, Inc., Plaintiff–Appellant,

v.

Steve JERNIGAN, Defendant–Appellee,

Fossil Drilling Corp., Jernigan Blade Services, Inc., Signal Drilling Co., James Brad Jernigan, Logan Pipe and Supply, Inc., Jernigan Brothers, Inc., and Vance Engineering, Intervenors–Appellees.

No. 78859.

Supreme Court of Oklahoma.

May 23, 1995.

As Corrected May 24, 1995.

---

Margaret McMorrow–Love, Robert D. Baron, Michael R. Ford, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, for appellant.

Thomas C. Williams, Robertson & Williams, Oklahoma City, for appellees.

OPALA, Justice.

The issues tendered for our decision are: [1] Is the trial court's order, which substituted the Federal Deposit Insurance Corporation [FDIC] as the sole plaintiff in the replevin action, vulnerable to vacation on the ground of fraud? and if not [2] Is the substitution order vulnerable to vacation on the ground of irregularity in obtaining that disposition? *We answer both questions in the negative.*

## I

### THE ANATOMY OF LITIGATION

InterFirst Bank of Dallas [InterFirst] brought a replevin action on January 16, 1986 against Steve Jernigan [Jernigan] for the return of certain items deemed to be real fixtures upon the premises (an office building) owned by its subsidiary, CSM, Inc. [CSM]. Jernigan, a tenant in the building at the time of the suit, counterclaimed against InterFirst, alleging that he (a) owned the personal property in suit, (b) had been wrongfully prevented from entering the building by InterFirst, and (c) sustained damages from his wrongful exclusion from the premises. On January 24, 1986 InterFirst amended its petition, adding CSM as a

party plaintiff. Some Jernigan-related entities were allowed to intervene on June 2, 1988 as parties counterclaimant.[1] Jernigan and the intervenors [collectively called Jernigan] filed an amended counterclaim on June 8, 1988.

InterFirst later merged with Republic-Bank of Dallas and became known as First RepublicBank of Dallas [First Republic]. On July 29, 1988 *First Republic was declared insolvent and the FDIC was appointed receiver.* On the same day, FDIC accepted NCNB Corporation's[2] bid for the bank's assets, which included all of the CSM stock. Later FDIC requested that it be substituted for InterFirst and CSM *as the sole plaintiff in the replevin suit.* The FDIC motion urged that it was the proper party in interest as receiver for *both* First Republic and CSM. *The motion and the nisi prius substitution order were both filed August 16, 1988.*

Jernigan dismissed his counterclaim without prejudice on December 20, 1988, refiling it on December 14, 1989. An amended counterclaim was brought January 3, 1991, alleging that FDIC was liable for the wrongful acts committed by InterFirst and CSM. Twenty days later FDIC advised the trial court that the parties should be realigned because it had been *mistakenly substituted* as a party for CSM. FDIC's motion explained that it *had not been appointed receiver* for CSM. FDIC requested that (a) it be allowed to withdraw as a plaintiff in the action because it had no interest in the equipment in dispute, (b) CSM be reinstated as a

party plaintiff, and (c) both it and CSM be shown as defending parties on the counterclaim. CSM entered an appearance, arguing against FDIC's realignment quest. The trial court ruled on February 21, 1991 that (a) the August 16, 1988 substitution order was void *ab initio* because FDIC was not the successor in interest to CSM and (b) both CSM and FDIC (qua receiver for First Republic) will remain in the replevin action as parties plaintiff as well as parties against whom Jernigan could assert claims.

CSM successfully invoked this court's writ power to prohibit the respondent-judge from enforcing its *February 21, 1991* order.[3] This court's May 14, 1991 writ holds that CSM had been *removed* from the litigation (a) by the August 16, 1988 substitution order, which, unless vacated by timely § 1031[4] proceedings, was a final order as to CSM, and (b) by the December 20, 1988 voluntary dismissal of Jernigan's counterclaim.

On May 7, 1991 Jernigan petitioned the trial court to vacate the substitution order, resting his claim on grounds of *fraud* and *irregularity* within the purview of 12 O.S. 1991 § 1031(3)[5] and (4).[6] The trial court set aside its substitution order and CSM brings this appeal for review of the nisi prius vacation proceedings.

## II

### STANDARD OF REVIEW

Oklahoma jurisprudence teaches that (in a single-claim suit)[7] a nisi prius

---

1. The intervenors are Fossil Drilling Corp., Jernigan Blade Services, Inc., Signal Drilling Co., James Brad Jernigan, Logan Pipe and Supply, Inc., Jernigan Brothers, Inc., and Vance Engineering.

2. For a discussion of the InterFirst/First Republic/FDIC chain of succession, see *Pernie Bailey Drilling Co. v. FDIC,* 905 F.2d 78, 79 (5th Cir. 1990). There, the federal court noted:

> "On July 29, 1988, the Comptroller of the Currency closed First RepublicBank and appointed the FDIC Receiver. On the same day the FDIC created a bridge bank under 12 U.S.C. § 1821(i), and FDIC entered into a Purchase and Assumption Agreement with the bridge bank, which was later renamed NCNB Texas National Bank."

3. *CSM, Inc. v. The Honorable Edward C. Cunningham, Judge of the District Court of Canadian County,* No. 77,214 (writ of prohibition issued May 14, 1991).

4. For the pertinent terms of 12 O.S.1991 § 1031(3), see *infra* note 29.

5. For the pertinent terms of 12 O.S.1991 § 1031(3), see *infra* note 29.

6. For the pertinent terms of 12 O.S.1991 § 1031(4), see *infra* note 16.

7. In a single-claim, single-plaintiff action, judicial substitution of another entity for that of the named plaintiff is the functional equivalent of the *filed claim's denial in its entirety. The substitution clearly denotes that the originally named*

disposition that lets a party out of the lawsuit constitutes an appealable order.[8] A substitution order has the legal effect of releasing parties; it is hence *final* within the meaning of 12 O.S.1991 § 953.[9] Any party aggrieved by such judicial action is entitled to seek corrective relief by appeal or by a vacation quest.[10] Because the August 16, 1988 order (which let out of the case both First Republic and CSM) was an appealable event when entered, CSM may bring an appeal from that decision's vacation.[11]

One pressing for a judgment's (or order's) vacation clearly bears the burden of bringing the case within the parameters of § 1031 relief.[12] It is the movant for vacation who must overcome the law's presumption of regularity that attaches to a judgment (or order) and to the judicial proceedings that precede it.[13] We hence review this case, in which an earlier order stands set aside, by the standards that govern the § 1031.1[14] vacation process—*i.e., by probing whether sound discretion was exercised upon sufficient cause shown.*[15]

The parties appear to agree the burden of persuasion rested below upon the movant and that it was his *onus* to show irregularity and fraud by clear and convincing evidence. For the reasons to be explained in Parts III and IV, we find, on this record, the requisite proof wanting.

*plaintiff has no claim.* If the provisions of 12 O.S.Supp.1993 § 994 were to be deemed as a barrier to an immediate appeal because the substitution leaves undetermined the substituted party's claim, an appeal could be prosecuted at once upon the trial judge's determination that there is no impediment to an immediate entry of a judgment upon the claim affected by the substitution.

8. *Oklahomans For Life, Inc. v. State Fair of Okl.*, Okl., 634 P.2d 704, 706 (1981) (the dismissal of a party defendant was held to be terminal and hence at once appealable as a final order); *Frazier v. Bryan Memorial Hosp. Authority*, Okl., 775 P.2d 281, 285 n. 13 (1989); *Lohrenz v. Lane*, Okl., 787 P.2d 1274, 1275 n. 1 (1990); *State ex rel. Trimble v. City of Moore*, Okl., 818 P.2d 889, 895 n. 19 (1991).

9. The terms of 12 O.S.1991 § 953 provide: "An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and *an order affecting a substantial right*, made in a special proceeding or upon a summary application in an action after judgment, *is a final order, which may be vacated*, modified or reversed, as provided in this article." (Emphasis added.)

10. *See in this connection Southwestern Natural Gas Co. v. Vernor*, 178 Okl. 344, 62 P.2d 1262, 1265 (1936).

11. "This court is vested with jurisdiction to entertain an appeal from an order which '... vacates or refuses to vacate a final judgment.' 12 O.S.1991 §§ 952(b)(2), 953. In such cases, the appellate court's inquiry does not focus on the underlying judgment, but rather on the correctness of the trial court's response to the motion to vacate, *which is an independently appealable postjudgment event." Central Plastics Co. v. Bar-*

*ton Industries, Inc.*, Okl., 818 P.2d 900, 900 (1991), citing *Schepp v. Hess*, Okl., 770 P.2d 34, 36 n. 2 (1989), and *Yery v. Yery*, Okl., 629 P.2d 357, 363 (1981) (emphasis in the original).

12. *Davidson v. Gregory*, Okl., 780 P.2d 679, 683 n. 16 (1989).

13. *Davidson, supra* note 12 at 683 n. 17. On appeal we indulge in the presumption that a trial court's decision is correct and the proceedings are regular. Thus, every fact not negatived by the record must be presumed to support the trial court's judgment or order. *See, e.g.,* (a) *Homeland Realty Co. v. Robison*, 39 Okl. 591, 136 P. 585 (syllabus ¶ 6) (1913) (absent a complete appellate record all presumptions are in favor of the trial court's judgment); (b) *Curtin v. Moroney*, 117 Okl. 276, 246 P. 232, 236 (1926) (no presumption may be indulged in which is contrary to the record where the error is not apparent on its face and the legal argument is indefinite and obscure) and (c) *Boorigie v. Boyd*, 41 Okl. 550, 139 P. 253, 254 (1914) (every reasonable presumption is in favor of the regularity of the proceedings in the nisi prius courts); *Moroney v. Tannehill*, 90 Okl. 224, 215 P. 938, 942 (1923).

14. 12 O.S.1991 § 1031.1. A § 1031.1 motion is also known as a *term-time* motion to vacate. *Schepp, supra* note 11 at 37–38.

15. We applied this common-law standard in *Schepp, supra* note 11 at 39, which addresses the legal correctness of a nisi prius response to a timely (12 O.S.1991) § 1031.1 plea. *See in this connection Furr v. Thomas*, Okl., 817 P.2d 1268, 1271 (1991); *Tedford v. Divine*, Okl., 734 P.2d 283, 285 (1987); *Fellows v. Owens*, 178 Okl. 224, 62 P.2d 1215, 1218 (1936).

## III

## FRAUD PRACTICED IN OBTAINING THE SUBSTITUTION OF PARTIES

CSM argues that (a) no evidentiary basis exists for vacating the August 16, 1988 substitution order on grounds of either intrinsic or extrinsic fraud; (b) Jernigan's vacation quest, rested on fraud within the purview of 12 O.S.1991 § 1031(3), was untimely because it came more than two years after the substitution order's entry; and (c) if Jernigan's claim was founded on extrinsic fraud, he failed to press this ground in a separate action.

Jernigan counters that he timely sought vacation relief on the ground of fraud. He directs us to *two acts of fraud* by counsel for CSM and FDIC which, he says, support his claim. He urges that fraud was committed upon the court by *false and misleading statements* in FDIC's motion to substitute parties—i.e., *that FDIC had become receiver for CSM.* Next, he urges that the substitution order was fraudulently obtained in an *ex parte hearing* without *either* notice to him *or* opportunity for an evidentiary hearing.

### Intrinsic Fraud Plea—False and Misleading Statements

■ When an order is sought to be vacated for *intrinsic* fraud, the time for the claim's commencement is governed by § 1031(4).[16] Relief from intrinsic fraud must be sought by direct attack launched in the case in which the fraud was committed.[17] The period allowed is no longer than *two years after the order's record entry.*[18] *Intrinsic fraud* is " '... any fraudulent conduct of the successful party which was practiced during the course of an actual adversary trial of the issues joined and which had no effect, directly and affirmatively, to mislead the defeated party to his injury after he announced that he was ready to proceed with the trial.' "[19]

■ The first act of fraud alleged by Jernigan consists of false and misleading statements to the trial court by counsel for FDIC and CSM when obtaining the order that substituted FDIC (as the sole plaintiff) for InterFirst and CSM. FDIC's substitution quest was based on its *status as receiver for both entities.* Some two and a half years later FDIC admitted this mistake by its motion to realign the parties. According to FDIC, while it had not been appointed receiver for CSM, it had assumed some of InterFirst's liabilities *qua* receiver for the bank, including whatever liability InterFirst and First Republic had incurred by the actions that were the subject of Jernigan's counterclaim.

**16.** The terms of 12 O.S.1991 § 1031(4) are:

"The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:

\*　　\*　　\*　　\*　　\*　　\*

Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order.\* \* \* "

**17.** *Chapman v. Chapman,* Okl., 692 P.2d 1369, 1373 n. 6 (1984).

**18.** The record entry (or filing) triggers the two-year time limit under the presently in force regime of appellate procedure. 12 O.S.Supp.1993 § 1038. At the time of the substitution order the critical time was "rendition" or "pronouncement", rather than the filed order. 12 O.S.1981 § 1038; *Chapman, supra* note 17 at 1373.

The version of § 1038 in effect when the substitution order was rendered (12 O.S.1981 § 1038) provided:

"Proceedings to vacate or modify a judgment or order, for the causes mentioned in subdivisions four, five and seven, of Section 5267 [§ 1031] *must be commenced within two years after the judgment was rendered or order made,* unless the party entitled thereto be an infant, or a person of unsound mind and then within two (2) years after removal of such disability. \* \* \* " (Emphasis added.)

The presently effective version, 12 O.S.Supp. 1993 § 1038, provides in pertinent part:

"Proceedings to vacate or modify a judgment, decree or order, for the causes mentioned in paragraphs 4, 5 and 7 of Section 1031 of this title *must be commenced within two (2) years after the filing of the judgment, decree or order,* unless the party entitled thereto be an infant, or a person of unsound mind and then within two (2) years after removal of such disability. \* \* \* " (Emphasis added.)

**19.** *Chapman, supra* note 17 at 1373 n. 6, quoting from *Calkin v. Wolcott,* 182 Okl. 278, 77 P.2d 96, 100 (1937).

FDIC's erroneous statements in its August 16, 1988 motion to substitute do not rise *beyond intrinsic fraud*—i.e. that which is perpetrated *within the course* of adversary proceedings. The character of this alleged conduct may not be distinguished from any other act of fraud committed by a suitor locked in a forensic contest. Since FDIC's alleged act of fraud *was* of an intrinsic nature, Jernigan's May 7, 1991 § 1031(4) vacation quest, brought *after* the lapse of two years from the August 16, 1988 substitution order, clearly was time barred.[20]

### *Extrinsic Fraud Plea—Ex Parte Hearing Without Notice*

■ A vacation claim for fraud, if instituted *more than two years after the judgment's entry*, is not timely unless it is predicated upon *extrinsic* fraud practiced in obtaining the judgment.[21] The latter must be brought within *two years from the date fraud was discovered.* 12 O.S.1991 § 95(3).[22] It may be prosecuted by launching a collateral *or* direct attack.[23] *Extrinsic fraud* consists of (a) any fraudulent conduct of a successful party, (b) perpetrated *outside* of an actual adversary trial or process and (c) practiced directly and affirmatively on the defeated party, (d) whereby he was *prevented* from presenting *fully* and *fairly* his side of the case.[24] In other words, only those acts constitute extrinsic fraud that vitiates a judgment which are an imposition upon the court and by which interested parties are *prevent-* ed from having their interests legally protected.

Jernigan's second claim to fraud is based on FDIC's act of procuring the substitution order in an ex parte hearing without (a) giving him notice of the hearing or (b) providing the trial court with any evidence of its receivership.

■ In support of its argument against vacation, CSM attached a deposition of FDIC's (former) counsel who testifies that sometime *before the filing of the August 16, 1988 motion,* he had talked to Jernigan's (former) lawyer about FDIC's intent to be substituted as the sole plaintiff in the case.[25] According to the affidavit, Jernigan's counsel "didn't really care" whether a substitution was effected; in fact, he responded that it was "okay" and "fine." [26] This evidence, adduced at the hearing on CSM's petition to vacate, is undisputed. Jernigan submitted *no* counter-affidavit to refute the deposition testimony.

Central to Jernigan's extrinsic-fraud claim is FDIC's *failure to give him notice* of its substitution quest. The appellate record, viewed in its entirety, is completely consistent with the notion that Jernigan had been notified of (and acceded to) FDIC's plans to be substituted (as the sole plaintiff) for CSM and InterFirst. We accordingly hold that, on this record, *sufficient cause,* within the

---

20.  *See* 12 O.S.1981 § 1038, *supra* note 18.

21.  *Chapman, supra* note 17 at 1373.

22.  The terms of 12 O.S.1991 § 95(3) provide in pertinent part:

> "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
>
> \*      \*      \*      \*      \*      \*
>
> Third.   Within two (2) years: ... an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of fraud. \* \* \*"

23.  *Hart v. Hart,* Okl., 878 P.2d 1063, 1065 n. 7 (1994).

24.  *Chapman, supra* note 17 at 1372–1373.

25.  FDIC's former counsel stated in his deposition (pgs. 18–19):

> "Q.   Did you have any conversations with opposing counsel? ...
> A.   Yes, I did—
> Q.   —about filing this motion?
> A.   I did.   I had a conference with [opposing counsel] prior to filing it ... he didn't really care, and he said okay, fine.
> Q.   You told him you were going to substitute?
> A.   Right.
> Q.   And when was this?
> A.   Prior to, I don't remember exactly what day....   I think it was probably the day before.
>
> \*      \*      \*      \*      \*      \*
>
> Q.   And you advised him and he didn't have any problem with it?
> A.   Right."

26.  *See supra* note 25.

meaning of the *Schepp* test,[27] *was not shown for vacating* the August 16, 1988 order on grounds of extrinsic fraud.

## IV

### IRREGULARITY IN OBTAINING THE SUBSTITUTION ORDER

■ Jernigan argues that FDIC's failure to serve him with notice of the motion to substitute before August 16, 1988 contravened §§ 2025(A), (C) and 2005 of the Oklahoma Pleading Code.[28] He urges the holding of an ex parte hearing on that *contested* motion, without either notice to him or evidence in its support, is an *irregularity* within the meaning of § 1031(3).[29] CSM counters that there is no proof in the record to establish an irregularity in obtaining the substitution order that would bring the case within the parameters of § 1031(3) relief.

Section 1031(3) authorizes vacation or modification of an order on grounds of irregularity in obtaining a judgment or order.[30] Jernigan's § 1031(3) vacation quest relies on the same facts urged by his extrinsic fraud plea—i.e., that the parties' substitution was effected in an ex parte hearing without the notice being served upon him. Two critical elements of this argument are: (1) Jernigan *opposed* the plan to remove InterFirst and CSM as parties plaintiff and (2) he had no notice of the impending action. The record is clear that Jernigan *was aware of* and *agreed with* FDIC's substitution quest. Nothing in the record indicates that during these pre-order communications Jernigan's counsel had opposed this quest for relief. Because the record demonstrates the substitution was approved by Jernigan's counsel, FDIC's failure to mail Jernigan a copy of the motion and to set it for an evidentiary hearing (before August 16, 1988) fails to establish an irregularity in obtaining the order. We hold Jernigan has failed to meet his burden for the relief of the substitution order's vacation on grounds of a § 1031(3) irregularity.

## CONCLUSION

The record gives *no* support to Jernigan's vacation quest. His § 1031(4) plea on grounds of intrinsic fraud is barred by § 1038's two-year time limit. He has not met his onus to establish by clear and convincing evidence either extrinsic fraud or a § 1031(3) irregularity. In sum, he has failed to bring for review a record that would overcome the presumption of nisi prius correctness which attaches to the August 16, 1988 substitution order. We hence conclude that the requisite sound discretion *was not exercised*[31] and the substitution order's vacation cannot stand.

The trial court's vacation order is accordingly reversed.

KAUGER, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA and WATT, JJ., concur.

27. *Schepp, supra* note 11 at 39.

28. Jernigan directs us to 12 O.S.1991 §§ 2025(A), (C) and 2005.
The pertinent terms of 12 O.S.1991 § 2025(C) are:
"In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subsection A of this section."
The provisions of 12 O.S.1991 § 2025(A) state in pertinent part:
"... The motion for substitution ... shall be served on the parties as provided in Section 5 [§ 2005] of this act...."
Section 2005 sets forth the requirements and manner for service of motions, orders and other pleadings.

29. The terms of 12 O.S.1991 § 1031(3) provide:
"The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:
* * * * * *
Third. For mistake, neglect or omission of the clerk or *irregularity in obtaining a judgment or order.* * * *" (Emphasis added.)

30. For the pertinent terms of 12 O.S.1991 § 1031(3), see *supra* note 29. *See also Norman v. Trison Development Corp.*, Okl., 832 P.2d 6, 9 (1992) (receivership proceedings may be reopened and a discharge order vacated on § 1031(3) grounds of irregularity in obtaining the decision).

31. *Schepp, supra* note 11 at 39.

ALMA WILSON, C.J., and SUMMERS, J., concur in result.

SIMMS, J., dissents.