OSCN Found Document:ANDREW v. DEPANI-SPARKES

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 ANDREW v. DEPANI-SPARKES
2017 OK 42
Case Number: 114082
Decided: 05/16/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 42, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

BRANDON and DANIELLE ANDREW, as Guardians of B. A., a minor child, and individually, as her parents, Plaintiffs/Appellants,
v.
ELISA DEPANI-SPARKES, D.O., THE PHYSICIAN GROUP, PLLC, a/k/a OCCO HEALTHCARE NETWORK, and INTEGRIS AMBULATORY CARE CORPORATION d/b/a INTEGRIS FAMILY CARE EDMOND, Defendants,
and
MERCY HEALTH CENTER, INC., d/b/a MERCY HEALTH CENTER, Defendant/Appellee.

CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION NO. I

¶0 Plaintiffs are parents who brought suit against medical providers for injuries sustained during their child's birth. Defendants filed motions for summary judgment and Daubert motions. The Honorable Bernard M. Jones, District Judge, Oklahoma County, granted the motion for summary judgment sought by Mercy Health Center, and subsequently certified the order as a § 994 judgment. Plaintiffs appealed and the Court of Civil Appeals affirmed the District Court. We hold (1) a question of fact was presented by the summary judgment filings, and (2) a trial court's pretrial ruling on a Daubert objection to evidence may not be used as grounds to retroactively support a summary judgment granted prior to the trial court's Daubert adjudication.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL
APPEALS VACATED; ORDER OF THE DISTRICT COURT REVERSED;
CAUSE REMANDED FOR FURTHER PROCEEDINGS 

Glendell D. Nix, Jacob Diesselhorst, Andy J. Campbell, Nicole R. Snap-Holloway, Maples, Nix & Diesselhorst, PLLC, for Plaintiffs/Appellants.
Kyle Sweet, Curtis Dewberry, Naureen Hubbard, Jasper Abbott, Sweet Law Firm, Oklahoma City, Oklahoma, for Defendant/Appellee.

EDMONDSON, J.

¶1 Plaintiffs filed an action in the District Court alleging defendants' negligence relating to the prenatal care and birth of plaintiffs' child. That court granted summary judgment to defendant Mercy Health Center and plaintiffs appealed. Plaintiffs argue the trial court did not apply a correct standard for causation and failed to recognize the testimony from their expert witnesses. Mercy argues the trial court correctly sustained a motion for summary judgment which relied in part on a Daubert[1] motion filed by Mercy. Mercy also argues plaintiffs simply failed to show causation required in a negligence action by an expert opinion. We reverse the summary judgment because plaintiffs' materials used to object to summary judgment showed expert opinions on causation sufficient to create a question of fact. We also explain a Daubert adjudication may not be applied retroactively to support a prior judgment. We remand the cause for further proceedings.

¶2 There were five pending motions in the trial court. Two were motions for summary judgment filed by defendants, and one of these was filed by Mercy. Three were Daubert motions. Two Daubert motions were filed by defendants: (1) Mercy's motion to exclude plaintiffs' expert concerning causation and the conduct of Mercy's nursing staff, and (2) Sparkes' motion to exclude the opinions of a different expert witness for plaintiffs. One Daubert motion was filed by plaintiffs to exclude testimony concerning a causation theory advocated by defendants.

¶3 On April 23, 2015, the trial court sent to the parties an email which granted Mercy's amended motion for summary judgment. The email stated plaintiffs failed to submit "evidence tending to prove that any act of Defendant's nursing staff was the direct cause of the injury to Plaintiffs' minor child."[2]

¶4 The next day on April 24th after granting Mercy's summary judgment motion, the journal entry of the summary judgment was filed and the trial court held a hearing on the pending Daubert motions. The trial court stated it understood the issues, oral argument was not necessary, but would be provided if any party wanted an oral argument. Tr. at 4-5. All counsel waived argument. The trial court granted Mercy's Daubert motion.

¶5 On April 28, 2015, and four days after the Daubert hearing, plaintiffs filed a "motion to reconsider" the summary judgment granted to Mercy, or in the alternative for the trial court to certify the court's ruling for an immediate appeal pursuant to 12 O.S. § 994. The motion had additional factual material attached, and Mercy objected to the motion.

¶6 On May 13, 2015, the trial court rendered an "Amended Order Granting Mercy Health Center, Inc.'s Amended Motion for Summary Judgment" that was filed June 2, 2015. The amendment repeated the language on the Court's April 24th journal entry and added a 12 O.S. § 994 certification stating the order was a final adjudication. The trial court also stayed the proceeding until completion of the § 994 appeal.

¶7 Plaintiffs appealed and the Court of Civil Appeals affirmed the trial court with one judge dissenting. Plaintiffs sought certiorari, three Special Justices were appointed to participate for three Justices of the Court who recused or disqualified in the matter. The Court granted the petition for certiorari. We vacate the opinion by the Court of Appeals, reverse the summary judgment, and remand the matter for additional proceedings.

I.

¶8 For an adjudicated claim to be suitable for immediate appeal pursuant to 12 O.S. § 994,[3] it must not arise from the same transaction or occurrence as any unadjudicated claims left pending in the trial court.[4] Both plaintiffs and defendants briefed the issue whether plaintiffs' suit was brought as single or multiple causes of action against multiple defendants. Both plaintiffs and Mercy argued the cause of action against Mercy is a cause of action separate and distinct from those pled against other defendants in the trial court. The Court has appellate jurisdiction to review the District Court's judgment.

II.

¶9 Generally, interlocutory orders that are not made subject to immediate appellate scrutiny may nevertheless obtain appellate scrutiny upon an appeal from a subsequent appealable order or judgment.[5] A trial court's Daubert order is an evidentiary ruling, and an interlocutory order anterior to judgment which is usually reviewed when a subsequent judgment or appealable order is appealed and after adequate steps have been pursued to preserve the alleged error.[6]

¶10 The appellate record and supplemental record filed in this Court do not contain (1) any Daubert motions or responses thereto, or (2) any journal entry of the trial court expressly granting or denying a Daubert motion. Generally, error assigned on appeal must be shown by the appellate record.[7] When the alleged error involves an evidentiary issue, the record on appeal must contain the evidence and a trial court record showing the judge's ruling. For example, an appellate complaint of insufficient evidence to support a judgment must be supported on appeal with the evidence submitted to the trial court.[8] In the matter before us, we do not review a usual Daubert issue of scientific validity or methodology used in an opinion provided by an expert witness.[9] Our appellate review of a Daubert issue is limited to the extent it is applicable to the motion for summary judgment and to the extent it may be included in that judgment as we explain herein.

 

III.

¶11 On April 24th, one day after deciding the summary judgment motion, the journal entry for the summary judgment was filed and the trial court also heard a Daubert motion. Four days later plaintiffs filed a motion to reconsider the summary judgment awarded to Mercy. Plaintiffs attached additional factual material. Mercy argued plaintiffs' April 28th motion to reconsider with an expert witness affidavit could not be considered by the trial court. Mercy argued plaintiffs' new affidavit attached to the motion conflicted with that expert's deposition testimony and the motion for reconsideration fell short of the requirements in 12 O.S. § 651 (new trial)[10] or § 1031 (vacation or modification).[11]

¶12 Prior to the repeal of 12 O.S. § 317 in 1984,[12] our law distinguished orders modifying a judgment and those amending a judgment,[13] and after that date we explained the function of amending a judgment by an order granting nunc pro tunc relief to correct a clerical error on the face of a judgment with an amended judgment stating what actually occurred. An amendment (nunc pro tunc) could relate back,[14] but a modification of a judgment did not relate back because it was considered a final order after an "original judgment."[15]

¶13 The journal entry of the amended judgment filed on June 2nd did not correct a clerical error in the April 24th journal entry, but added a § 994 certification of finality which made the adjudication appealable at that time.[16] The "amendment" did not amend or modify a "judgment." The trial court's order granting "summary judgment" to Mercy on April 23rd was not a judgment at that time, but a partial summary adjudication granted to one of the defendants in the action, and the order did not become a judgment until May 13th when the 994 certification was made by the trial court, and then it was made appealable on June 2nd when a journal entry was filed.

 

¶14 The timing of the trial court's creation of a § 994 judgment shows that plaintiffs' motion for reconsideration was not barred or restricted in scope by either § 651 or §1031, and we conclude Mercy's argument on this point is incorrect, as we now explain. In House v. Town of Dickson, we stated the following.

A partial summary adjudication is not a judgment under title 12, section 681 of the Oklahoma Statutes nor is it a final order under title 12, section 953. Reams, 1979 OK 171 at ¶ 3, 604 P.2d at 374. A partial summary adjudication is not appealable unless it is an interlocutory order (1) appealable by right under title 12, sections 952(b)(2) or 993 or other statutory provision or (2) certified for immediate appeal under title 12, section 952(b)(3), or (3) it is prepared as a final judgment, order, or decree at the direction of the court with a finding that there is no just reason for delay and disposes of some of the claims pursuant to title 12, section 994. Id. The district court's partial summary adjudication before us is not appealable by right nor does it contain the necessary language for review as required by title 12, sections 952(b)(3) or 994.

House v. Town of Dickson, 2007 OK 57, ¶ 9, 193 P.3d 964, 967-968, citing Reams v. Tulsa Cable Television, Inc., 1979 OK 171, ¶ 3, 604 P.2d 373, 374, and 12 O.S. §§ 952, 993, & 994.

Our opinion ten years earlier in LCR, Inc. v. Linwood Properties[17] was consistent with House and explained a "motion for a new trial" challenging a partial summary adjudication was not a 12 O.S. § 651 motion for new trial or a 12 O.S. § 1031.1 motion.[18] A partial summary adjudication which is lacking finality and appealability as a non-appealable interlocutory order "is but an intermediate order in the case," remains within the trial judge's complete control to modify or alter at any time before judgment," and a motion to reconsider challenging that intermediate order "is to be treated as a request for reconsideration of an intermediate ruling in the case."[19]

¶15 Mercy noted a motion to reconsider may be treated as a § 651 motion for new trial or a motion to vacate pursuant to § 1031.1 or § 1031. Mercy argued plaintiffs' motion to reconsider was limited in scope to the grounds listed in 12 O.S. § 1031. A motion to reconsider may be treated as a 12 O.S. § 651 motion for new trial when the motion to reconsider is filed within a ten-day period after the filing of a judgment, decree or appealable order.[20] A motion to reconsider may treated as a 12 O.S. § 1031 or §1031.1 motion "to modify or to vacate a final order or judgment . . . if filed after ten (10) days but within thirty (30) days of the filing of the judgment, decree, or appealable order."[21] Plaintiffs' motion to reconsider was not filed after a "judgment decree, or appealable order" or after a "final order."

¶16 Section 1031 specifies nine causes for vacating or modifying judgments and orders.[22] Generally, a trial court's discretion to modify one of its interlocutory orders anterior to judgment is within the court's "complete control" and not limited to these specific causes,[23] and a party's right to invoke that judicial discretion to review an interlocutory partial summary adjudication anterior to judgment should not be restricted unless a specific statute provides for such restriction and also provides fixed principles for determining the correctness of its application by the trial court on a subsequent appeal.[24]

¶17 We reject Mercy's argument that a motion to reconsider requesting a change in an interlocutory order anterior to judgment should be treated as if the motion sought vacation of a judgment pursuant to § 1031 when the terms of that statute do not expressly include that interlocutory order within the scope of that statute. A motion to reconsider an interlocutory order anterior to judgment is not a § 1031 motion to vacate unless made so by the terms of the statute. We note this conclusion is consistent with our opinions discussing timeliness of appeals relating to §1031 motions and we need not address appealability issues which would arise if we were to hold otherwise as requested by Mercy.[25]

¶18 A motion for new trial filed "after the announcement of the decision on all issues in the case but before the filing of the judgment or decree shall be deemed filed immediately after the filing of the judgment or decree."[26] Plaintiffs' motion to reconsider was not filed after announcement of a decision "on all the issues in the case." The motion to reconsider requesting a change to an interlocutory partial summary adjudication is not a premature § 651 motion for new trial challenging a decision on all the issues in the case.

 

¶19 A party is not required to file a motion for new trial in order to file a subsequent appeal.[27] However, pursuant to 12 O.S. § 991[28] if a party files a motion for new trial, then the assignments of error in a subsequent appeal are limited to those raised in the motion before the trial court.[29] Consistent with LCR, Inc. v. Linwood Properties, supra, we reject any implication that a motion to reconsider requesting a change in an interlocutory order anterior to judgment should be the functional equivalent to a § 651 motion for new trial, and that an appeal by a party who sought that interlocutory relief should be procedurally restricted by § 651 in raising assignments of error.

¶20 Our analysis is consistent with that made by the Court of Civil Appeals in a recent opinion. That court rejected an argument that party's failure to include certain assignments of error in a motion to reconsider constituted a waiver of those assignments on a subsequent appeal. The appellate court concluded the motion to reconsider was not the functional equivalent to a motion for new trial when it requested a change in a nonfinal (interlocutory) order made in the course of action over which the trial judge had complete control to modify at any time before judgment.[30]

¶21 Because a trial judge has "complete control" to alter a partial summary adjudication prior to judgment, we view the motion to reconsider as invoking that discretion and not as a functional equivalent to a motion for new trial. The trial judge was not procedurally barred by § 651 or § 1031 from hearing plaintiffs' motion to reconsider and reviewing the attached material. However, District Court Rule 13 does prohibit a party from engaging in conduct amounting to the proverbial "taking a second bite at the apple."

¶22 The Court of Civil Appeals and Mercy relied on two opinions, Culpepper and Frey,[31] for the principle that appellate review of an order granting a motion for summary judgment is based upon the record before the trial court when granting summary judgment and not on a record which could have been supplied. The Court of Civil Appeals did not consider the affidavit filed in support of plaintiffs' motion to reconsider. Plaintiffs argue the affidavit should be considered.

¶23 In Culpepper we stated: (1) "we find no authority or court rule that requires the trial court to reconsider" and (2) "summary judgment is to be made on the record which parties have actually presented and not on a record which is potentially possible," citing Weeks v. Wedgewood Village, Inc.[32] The first statement is clearly incorrect based upon opinions since Culpepper which allow a party to invoke judicial discretion by a filing a motion to reconsider. The second rests upon District Court Rule 13 procedure for summary judgments.

¶24 District Court Rule 13(b) specifies that when a motion for summary judgment is granted a party opposing summary judgment "cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists."[33] We do not depart from that principle. A party opposing summary judgment must provide the factual statements in support of opposition or seek additional time to present the evidentiary material as provided by Rule 13(d).[34] Both the Court of Civil Appeals and Mercy are correct that new submissions in support of the motion to reconsider should not be considered.

¶25 This conclusion is consistent with the U. S. Supreme Court's view that parties should present their best case and "best expert evidence" when the case is in the procedural posture of an adjudication on a Daubert issue. Seventeen years ago the U.S. Supreme Court explained that after the Daubert decision parties were "on notice" they should present their "best expert evidence" when a Daubert objection is made.

Since Daubert, moreover, parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet. . . . It is implausible to suggest, post-Daubert, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail. . . . In this case, for example, although Weisgram was on notice every step of the way that Marley was challenging his experts, he made no attempt to add or substitute other evidence.

Weisgram v. Marley Company, 528 U.S. 440, 455-456, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000), (citations and material omitted).

Ten years prior to Weisgram the High Court observed, "A litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk."[35] Parties should present their best expert evidence in support of and in response to a motion for summary judgment.[36]

¶26 A § 651(7) motion for new trial provides for presenting newly discovered evidence in support of the motion.[37] Mercy argued that an affidavit by plaintiffs' expert witness filed in support of the motion to reconsider was a new and inconsistent opinion, and should be not considered because it was a "sham affidavit." Our Court of Civil Appeals has developed a sham affidavit doctrine based, in part, on one aspect of the summary adjudication process in federal courts.[38] We need not analyze the sham affidavit doctrine, its application to an expert witness affidavit, review the doctrine in Oklahoma and federal courts,[39] or discuss application of a § 651 provision to a motion to reconsider an interlocutory summary adjudication.

 

¶27 We are not called upon to review either a § 651 or § 1031 motion. But we incorporate one element of § 651 appellate review when reviewing a motion to reconsider challenging an interlocutory summary adjudication anterior to judgment. The standard of review when a trial court denies a motion for new trial after granting summary judgment is set out in a recent opinion, Reeds v. Walker.[40]

 

Summary relief issues stand before us for de novo review. All facts and inferences must be viewed in the light most favorable to the non-movant. Appellate tribunals bear the same affirmative duty as is borne by nisi prius courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant. Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor. A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our de novo review of the summary adjudication's correctness. Judicial discretion is abused when a trial court errs with respect to a pure, unmixed question of law.

 

Reeds v. Walker, 2006 OK 43, at ¶ 9, 157 P.3d at 106-107, notes omitted and emphasis added.

Similar to Reeds v. Walker, we have recently explained that we review a summary judgment de novo, without deference to the lower court; we review the denial of a new trial for abuse of discretion; and it is an abuse of discretion to deny a new trial where the summary judgment was incorrect.[41] We now examine whether the order granting summary judgment was correct.

IV.

¶28 The petition for certiorari states the trial court failed to consider all of plaintiffs' evidentiary material during the partial summary adjudication. The April 24th interlocutory partial summary adjudication was granted before the trial court held a scheduled Daubert hearing. Mercy's motion for summary judgment states it is entitled to judgment because plaintiffs did not produce evidence in the form of medical expert testimony that an act of Mercy's nursing staff was the direct cause of an injury to plaintiffs' child. That same motion also states that testimony "tending towards evidence of causation against Defendant" came from one of plaintiffs' experts, M. M., Ph.D, M.S.N, and Mercy had filed a Daubert motion contending this expert was not qualified to testify concerning causation.

¶29 In summary, Mercy's motion for summary judgment states one of plaintiffs' experts has opined concerning causation but it has filed a Daubert objection to that opinion, the trial judge granted summary judgment stating that plaintiffs failed to show causation, and the decision to grant summary judgment was made prior to the judge's hearing on whether that expert 's testimony should be excluded under Daubert. The trial judge's email sent to counsel and granting summary judgment includes the following:

Plaintiffs have provided no evidence tending to prove that any acts of Defendant's nursing staff was the direct cause of the injury to Plaintiffs' minor child. Indeed, of Plaintiffs' experts qualified to opine as to the causation element of Plaintiffs' prima facie case of medical negligence, none point to any evidence supporting Plaintiffs' assertion that the actions of Defendant's nursing staff directly caused the injury to Plaintiffs' minor child. In the absence of evidence establishing the causation element of Plaintiffs' prima facie case of medical negligence, evidence which must be proven through expert testimony, Plaintiffs cannot meet their burden of proof, and Defendant is entitled to judgment as a matter of law.

The language in this email was used for the April 24th journal entry as well as the June 2nd journal entry. The supplemental record on appeal contains a transcript of the hearing on plaintiffs' motion to reconsider and request for § 994 certification. The transcript shows opposing counsel addressing the opinions of various experts concerning causation, the court denying the motion to reconsider, and then the trial court certifying a § 994 judgment for an immediate appeal.

¶30 The trial judge's language granting summary judgment contains language stating "of Plaintiffs' experts qualified to opine as to the causation element . . . none point to any evidence supporting Plaintiffs' assertion." However, defendant's motion for summary judgment states that plaintiffs' expert, M. M., Ph.D, M.S.N, gave an opinion concerning causation relating to Mercy's employees and their actions as to shoulder dystocia.

¶31 According to Mercy's motion for summary judgment, expert witness, M.M. stated the use of Pitocin "contributed to the condition of shoulder dystocia." Plaintiffs' response on summary judgment contains part of the deposition of another expert, Dr. H., who distinguishes between shoulder dystocia and brachial plexus injury, states that one may occur without the other, and then answers affirmatively to the question that it is his opinion that "excessive lateral traction on the neck during the delivery of the infant, after the head has been delivered, and shoulder dystocia is encountered, is the direct and proximate cause of the permanent brachial plexus injury [in this case]." This is an opinion that the shoulder dystocia was a factor in creating the injury to the infant.

¶32 Mercy elicited testimony that shoulder dystocia and brachial plexus injury may each occur when the other one is absent. However, this testimony relating to general causation did not negate the claim that a shoulder dystocia could be a factor in brachial plexus injury in either the population in general or in this specific instance, which was the claim made by plaintiffs in their summary adjudication response. Witness M.M. provided an opinion on the nature of Pitocin, that it became contraindicated and the nursing staff should have called the physician for it to be discontinued, and that the Pitocin use "is the contribution to impacting the shoulder" relating to the shoulder dystocia. The plaintiffs' response on summary adjudication cited to depositions allegedly indicating the Pitocin dosage was increased by the nursing staff nine times in violation of Mercy's written policy on Pitocin use and contrary to the order of the prescribing physician. Material attached to plaintiffs' response on summary judgment states that Pitocin may be used to initiate and improve uterine contractions. Material from two depositions by doctors attached to that same response state that both contractions and pushing caused the brachial plexus injury.

¶33 An adjudication on summary judgment settles only questions of law.[42] Summary judgment is not proper when material facts are disputed.[43] A trial court determination that no fact exists of record to support the issue of fact submitted for resolution is a determination of an issue of law and requires a de novo review.[44] The trial court's determination no fact showed a causal link between the actions of Mercy's employees and the injury to the infant requires de novo review. The materials submitted with plaintiffs' response on summary adjudication are sufficient to show a disputed fact on the issue of causation, i.e., whether the alleged abnormal Pitocin exposure created contractions which in turn contributed to the creation of the brachial plexus injury.

V.

¶34 When the trial court made the partial summary adjudication and stated "of Plaintiffs' experts qualified to opine as to the causation" did not show causation, the language appears to be either (1) not applying precedent that a defendant whose conduct allegedly contributed to cause a plaintiff's injury is liable for the injury even if his or her conduct was not sufficient by itself to cause the injury, or (2) using a Daubert analysis (or some other standard) to exclude testimony of one or more of plaintiffs' expert witnesses. The trial court's adjudication of Mercy's Daubert motion to exclude testimony by plaintiffs' experts may not be used on appeal to support affirming the grant of partial summary adjudication that was later certified as a final appealable judgment.

¶35 Because the trial court's language granting summary judgment occurred prior to the hearing on the Daubert motions filed by the parties, the court's language creating a class of proper experts on the issue of causation from the larger class of all of plaintiffs' experts, appears to be a sua sponte Daubert assessment excluding the testimony of at least one of plaintiff's expert witnesses. The trial court's language, taken by itself, could merely show a recognition that not every expert witness for plaintiffs was a causation expert. But the trial court's language appears in a context of granting Mercy's motion for summary judgment which was expressly predicated by Mercy upon its Daubert motion excluding at least one of plaintiffs' experts on the issue of causation which creates the appearance that the trial court did not consider that witness on the issue of causation. Facts showing such exclusion, if made, were not expressly stated by the trial court as part of its summary adjudication, raising a due process issue.[45] We need not determine whether a trial court possesses discretion to make a sua sponte Daubert assessment,[46] or whether such sua sponte inquiry would be consistent with the general concept that a party may waive an objection to evidence by failing to timely object,[47] or application of District Court Rule 13(c) with notice to the parties.[48] A trial court commits reversible error by making a sua sponte Daubert decision as a basis for granting summary judgment without notice to a party that the party's testimony is subject to being excluded as part of that adjudication.

¶36 In Jahn v. Equine Servs.,[49] defendants moved for summary judgment based on the assertion plaintiff failed to show causation. The trial court determined sua sponte, and without allowing additional briefing, that the proposed testimony of two doctors was inadmissible under Daubert, rejected their expert testimony, and then granted summary judgment to defendants because plaintiff did not show causation.[50] Plaintiff successfully appealed the trial court's summary judgment and its sua sponte decision to strike the experts' testimony as inadmissible under the standard set forth in Daubert.

¶37 That appellate court noted a trial court is not required to hold a Daubert hearing. We agree with both our Court of Criminal Appeals and the U. S. Supreme Court that a Daubert hearing is not required in every circumstance when a party makes an objection and argues for application of Daubert.[51] In Jahn, the appellate court noted "the record was incomplete because the court gave plaintiff no notice that it would be ruling on the admissibility of her experts as part of its summary judgment adjudication.[52] In our case today, there is no notice the trial court would decide the summary judgment motion utilizing an application of Daubert prior to the Daubert hearing.

¶38 The manner by which a trial court controls its docket, including the timing or order of its decisions, is within the court's inherent power to control so long as the reasonable exercise of this inherent power does not prejudice the rights of the parties involved.[53] District Court Rule 13(c) expressly provides the following.

Evidentiary material that does not appear to be convertible to admissible evidence at trial shall be challenged by objection or motion to strike, or the objection shall be deemed waived for the purpose of the decision on the motion for summary judgment or summary disposition. If a trial of factual issues is required after proceedings on a motion for summary judgment or summary disposition, evidentiary rulings in the context of the summary procedure shall be treated as rulings in limine....

A party has a procedural right to have his or her admissible evidence be considered on summary judgment unless challenged by an opposing party. Fundamental fairness cannot be afforded except within a framework of orderly procedure, and that fairness includes giving notice of certain judicial events altering legally cognizable rights.[54] The trial court could not sua sponte exclude plaintiffs' witnesses and its subsequent ruling on Mercy's Daubert motion could not be applied retroactively as a ground to support the partial summary adjudication. Since the summary judgment is reversed herein, we need not engage in additional analysis on this issue because any trial court Daubert determination used sub silentio for summary judgment is also an interlocutory order anterior to judgment and advisory on a motion in limine, and the Daubert causation issue is not a conclusively established issue on this record for the trial court upon remand.[55]

VI.

¶39 We hold that (1) a question of fact was presented by the summary judgment filings, and (2) a trial court's pretrial ruling on a Daubert objection to evidence may not be used as grounds to retroactively support a summary judgment granted prior to the trial court's Daubert adjudication. Certiorari was previously granted. We vacate the opinion of the Court of Civil Appeals. The summary judgment granted to Mercy is reversed and the matter is remanded to the District Court for additional proceedings.

¶40 WATT, WINCHESTER, EDMONDSON, COLBERT, and REIF, JJ.; and CUNNINGHAM, MCCALL, and BASS, S.J.J., concur.

¶41 WYRICK, J., concur in judgment.

¶42 CUNNINGHAM, MCCALL, and BASS as Special Justices in lieu of COMBS, C.J. who certified his disqualification, and GURICH, V.C.J., and KAUGER, J., who certified their recusal.

FOOTNOTES

[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

[2] Record on Accelerated Appeal, Tab 7, Plaintiffs' Exhibit 1, trial judge's email to counsel for the parties.

[3] 12 O.S. 2011 § 994:

A. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the final judgment, decree, or final order adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk.

B. When a court has ordered a final judgment, decree, or final order under the conditions stated in subsection A of this section, the court may stay enforcement of that final judgment, decree or final order until the filing of a subsequent final judgment, decree or final order and may prescribe such conditions as are necessary to protect the interests of all parties to the action. If the court stays the enforcement of a final judgment, decree, or final order until the filing of a subsequent final judgment, decree, or final order, notice of the vacation or modification of the stay or of any condition that was imposed on the enforcement of the final judgment, decree, or final order shall be given to the parties affected by the stay or condition.

[4] Casey v. Casey, 2005 OK 13, n.5, 109 P.3d 345, 347; Liberty Bank and Trust Co. of Oklahoma City, N.A. v. Rogalin, 1996 OK 10, 912 P.2d 836, 838.

[5] In re Guardianship of Berry, 2014 OK 56, ¶ 34, n. 11, 335 P.3d 779, 790.

[6] Christian v. Gray, 2003 OK 10, ¶ 45, 65 P.3d 591, 609 (review of Daubert order sought by certified interlocutory order was recast to extraordinary writ proceeding, and Court explained "it will not serve as a pre-trial reviewing court for orders adjudicating motions in limine."). Cf. Ellison v. Ellison, 1996 OK 64, 919 P.2d 1, 2 ("Evidentiary rulings during trial are reviewable when the subsequent judgment or appealable order is appealed"); Collier v. Reese, 2009 OK 86, 223 P.3d 966 (admissibility of evidence addressed in the context of an appeal where the order was an appealable interlocutory order); Martin v. Johnson, 1998 OK 127, ¶ 18, 975 P.2d 889, 894 (interlocutory order anterior to judgment may be reviewed on appeal from the judgment).

A ruling on a motion in limine is advisory and preliminary, and error is committed, if at all, when a ruling on the issue is made during the trial subsequent to adjudication of the motion in limine. Worsham v. Nix, 2006 OK 67, n. 6, 145 P.3d 1055, 1061. See also Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc., 1985 OK 66, 713 P.2d 572, 579, and the discussion at note 55 infra.

[7] Legal error may not be presumed from a silent appellate record, and absent a record affirmatively showing error this Court presumes that the trial court did not err. Hamid v. Sew Original, 1982 OK 46, 645 P.2d 496, 497 (appeal dismissed because appellate record presents nothing for our review).

[8] Powers v. District Court of Tulsa County, 2009 OK 91, n. 24, 227 P.3d 1060, citing Harrison v. Harman, 1925 OK 937, 241 P. 476.

[9] See, e.g., Christian v. Gray, 2003 OK 10, ¶¶ 7-8, 65 P.3d 591, 597-598 (discussing evidentiary reliability based upon "scientific reliability" and Daubert's four-part non-exhaustive test: 1. Can the expert's theory or technique be, or has it been, tested; 2. Has that theory or technique been subjected to peer review and publication; 3. Is there a known or potential rate of error ... and the existence and maintenance of standards controlling the technique's operation; and 4. Is there widespread acceptance of the theory or technique within the relevant scientific community.).

[10] 12 O.S. 2011 § 651:

A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party:
1. Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial;
2. Misconduct of the jury or a prevailing party;
3. Accident or surprise, which ordinary prudence could not have guarded against;
4. Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
5. Error in the assessment of the amount of recovery, whether too large or too small, where the action is upon a contract, or for the injury or detention of property;
6. That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law;
7. Newly-discovered evidence, material for the party applying, which could not, with reasonable diligence, have been discovered and produced at the trial;
8. Error of law occurring at the trial, and objected to by the party making the application; or
9. When, without fault of the complaining party, it becomes impossible to prepare a record for an appeal.

[11] 12 O.S. 2011 § 1031:
The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:
1. By granting a new trial for the cause, within the time and in the manner prescribed in Sections 651 through 655 of this title;
2. As authorized in subsection C of Section 2004 of this title where the defendant had no actual notice of the pendency of the action at the time of the filing of the judgment or order;
3. For mistake, neglect, or omission of the clerk or irregularity in obtaining a judgment or order;
4. For fraud, practiced by the successful party, in obtaining a judgment or order;
5. For erroneous proceedings against an infant, or a person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings;
6. For the death of one of the parties before the judgment in the action;
7. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending;
8. For errors in a judgment, shown by an infant in twelve (12) months after arriving at full age, as prescribed in Section 700 of this title; or
9. For taking judgments upon warrants of attorney for more than was due to the plaintiff, when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment.

[12] 12 O.S. 1981 § 317, (Repealed by Laws 1984, c. 164, § 32, eff. Nov. 1, 1984), stated in part: "The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding...."

[13] See, e.g., Cartwright v. Atlas Chemical Industries, Inc., 1981 OK 4, 623 P.2d 606, 609-610 (Court discussed 12 O.S. § 1031 and § 317 [now repealed] and distinguished amendment of a judgment roll pursuant to § 317 and modification of a judgment pursuant to § 1031).

[14] See, e.g., Stork v. Stork, 1995 OK 61, 898 P.2d 732, 736-737 (A nunc pro tunc order could be used to amend a judgment and supply an inadvertent clerical omission in recording a judicial act that actually took place, but a nunc pro tunc could not be used as a vehicle to review a judgment for legal error or as a means to enter a different judgment.); Ex parte Harris, 1947 OK CR 1, 176 P.2d 508, 511 (quoting a legal encyclopedia and stating "A nunc pro tunc entry of an order relates back and operates to make the order effective as of the date when it should have been entered."); State ex rel. Oklahoma Bar Ass'n v. Cantrell, 1987 OK 17, n. 2, 734 P.2d 1292, 1294 (Opala, J., joined by Hargrave, V.C.J., Hodges and Simms, JJ., concurring in part and dissenting in part, citations including Black's Law Dictionary and explaining the relation-back doctrine is "a principle that an act done today is considered to have been done at an earlier time." Black's Law Dictionary, 1158 (5th ed.1979)).

[15] See, e.g., Salyer v. National Trailer Convoy, Inc., 1986 OK 70, 727 P.2d 1361, 1363 citing Yery v. Yery, 1981 OK 46, 629 P.2d 357, 363 (on a timely appeal from a court's order disposing of a 12 O.S. § 1031.1 motion filed more than 10 days after the trial court's original ruling, the appellate review does not examine the original ruling or "original judgment" and the review is limited to the correctness of the trial court's order denying § 1031.1 relief); 12 O.S.Supp.2015, Ch. 15, App. 1, Okla. Sup. Ct. R. 1.20 (b)(3) (defining a "final order" as including an order modifying or refusing to modify a judgment).

[16] 12 O.S. 2011 § 696.2 (D): The filing with the court clerk of a written judgment, decree or appealable order, prepared in conformance with Section 696.3 of this title and signed by the court, shall be a jurisdictional prerequisite to the commencement of an appeal. The following shall not constitute a judgment, decree or appealable order: A minute entry; verdict; informal statement of the proceedings and relief awarded, including, but not limited to, a letter to a party or parties indicating the ruling or instructions for preparing the judgment, decree or appealable order.

[17] LCR, Inc. v. Linwood Properties, 1996 OK 73, 918 P.2d 1388, 1393 (a trial court's order addressing a motion for "new trial" challenging a partial summary adjudication "is not addressed to a judgment, decree or appealable order, . . . neither can it pass muster under the rubric of 12 O.S.1991 § 651 as a judicial response to a true new trial motion . . . [and] may not hence be treated as an appealable ruling made upon a § 651 or a § 1031.1 motion.") (material omitted).

[18] 12 O. S. Supp.2013 § 1031.1:

A. A court may correct, open, modify or vacate a judgment, decree, or appealable order on its own initiative not later than thirty (30) days after the judgment, decree, or appealable order prepared in conformance with Section 696.3 of this title has been filed with the court clerk. Notice of the court's action shall be given as directed by the court to all affected parties.

B. On motion of a party made not later than thirty (30) days after a judgment, decree, or appealable order prepared in conformance with Section 696.3 of this title has been filed with the court clerk, the court may correct, open, modify, or vacate the judgment, decree, or appealable order. If the moving party did not prepare the judgment, decree, or appealable order, and Section 696.2 of this title required a copy of the judgment, decree, or appealable order to be mailed to the moving party, and the court records do not reflect the mailing of a copy of the judgment, decree, or appealable order to the moving party within three (3) days, exclusive of weekends and holidays, after the filing of the judgment, decree, or appealable order, the motion to correct, open, modify, or vacate the judgment, decree, or appealable order may be filed no later than thirty (30) days after the earliest date on which the court records show that a copy of the judgment, decree, or appealable order was mailed to the moving party. The moving party shall give notice to all affected parties. A motion to correct, open, modify, or vacate a judgment or decree filed after the announcement of the decision on all issues in the case but before the filing of the judgment or decree shall be deemed filed immediately after the filing of the judgment or decree.

C. If more than thirty (30) days have passed since the filing of a judgment, decree, or appealable order, proceedings to vacate or modify the judgment, decree, or appealable order shall be by petition in conformance with Section 1033 of this title unless approved by all parties who have entered an appearance in the lawsuit.

D. The party that prevails in an action to vacate any judgment, decree or appealable order shall only be considered the prevailing party for the purpose of the award of costs, to include a reasonable attorney fee, if such party prevails on the merits in the underlying action.

[19] LCR, Inc. v. Linwood Properties, 1996 OK 73, 918 P.2d 1388, 1393.

[20] Smith v. City of Stillwater, 2014 OK 42, ¶ 10, 328 P.3d 1192, 1196.

[21] Smith v. City of Stillwater, at ¶ 10, 328 at 1196, emphasis added and material omitted.

[22] 12 O.S.2011 § 1031, note 11, supra.

[23] LCR, Inc. v. Linwood Properties, 1996 OK 73, 918 P.2d 1388, 1393.

[24] The exercise of a discretionary power by trial judge is not one without fixed principles by which its correctness may be determined upon appellate review. Christian v. Gray, 2003 OK 10, ¶ 45, 65 P.3d 591, 609.

[25] We have explained an order appealable by right when the order on a motion to partially vacate a decision is analogous or the functional equivalent to an order granting a new trial. Chemco Products, Inc. Moley Produce Co., Inc., 1980 OK 122, 615 P.2d 300, 301.

[26] 12 O.S. 2011 § 653 (C): "A motion for new trial filed after the announcement of the decision on all issues in the case but before the filing of the judgment or decree shall be deemed filed immediately after the filing of the judgment or decree."

[27] 12 O.S.Supp.2016, Ch. 15, App. 1, Okla. Sup. Ct R. 1.22 (c)(1) states in part: "The right of a party to perfect an appeal from a judgment or final order is not conditioned upon the filing of a motion for new trial."

[28] 12 O.S.2011 § 991:

(a) The right of a party to perfect an appeal from a judgment, order or decree of the trial court to the Supreme Court shall not be conditioned upon his having filed in the trial court a motion for a new trial, but in the event a motion for a new trial is filed in the trial court by a party adversely affected by the judgment, order or decree, no appeal to the Supreme Court may be taken until subsequent to the ruling by the trial court on the motion for a new trial. This provision shall not apply, however, to an appeal from an order of the Corporation Commission.

(b) If a motion for a new trial be filed and a new trial be denied, the movant may not, on the appeal, raise allegations of error that were available to him at the time of the filing of his motion for a new trial but were not therein asserted.

[29] See, e.g., Slagell v. Slagell, 2000 OK 5, ¶¶ 7-8, 995 P.2d 1141, 1142 (appeal dismissed because assignments of error in the appeal were not raised by that party's motion for new trial and Court relied in part on 12 O.S. § 991(b)); City of Broken Arrow v. Bass Pro Outdoor World, L.L.C., 2011 OK 1, ¶ 11, 250 P.3d 305, 311 (motion for new trial acts to limit the issues reviewed on appeal to those raised by that motion).

[30] In re Marriage of Murphy, 2010 OK CIV APP 1, ¶ 6, 225 P.3d 820 (published by order of the Court of Civil Appeals).

[31] Culpepper v. Lloyd, 1978 OK 90, 583 P.2d 500, and Frey v. Independence Fire and Cas. Co., 1985 OK 25, 698 P.2d 17.

[32] Weeks v. Wedgewood Village, Inc., 1976 OK 72, 554 P.2d 780.

[33] 12 O.S.Supp. 2013 Ch. 2, App. Rules for District Courts of Oklahoma, Rule 13(b):

b. Any party opposing summary judgment or summary disposition of issues shall file with the court clerk within fifteen (15) days after service of the motion a concise written statement of the material facts as to which a genuine issue exists and the reasons for denying the motion; provided, however, that a responsive statement shall not be due from a party earlier than forty-five (45) days after service of the first summons by, or upon, that party. Unless otherwise ordered by the court, the adverse party shall attach to, or file with, the statement evidentiary material justifying the opposition to the motion, but may incorporate by reference material attached to or filed with the papers of another party. In the statement, the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials. All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material. If the motion for summary judgment or summary disposition is granted, the party or parties opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists.

[34] 12 O.S.Supp. 2013, Ch. 2, App. Rules for District Courts of Oklahoma, Rule 13(d):

d. Should it appear from an affidavit of a party opposing the motion that for reasons stated the party cannot present evidentiary material sufficient to support the opposition, the court may deny the motion for summary judgment or summary disposition without prejudice or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. A motion filed pursuant to this paragraph shall not be deemed a consent to the exercise by the court of jurisdiction over the party, or a waiver of the right to file a motion to dismiss the action.

[35] Weisgram, 528 U.S. at 456, quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 897, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

More than twenty years ago, one author opined that courts should generally refuse to grant the plaintiff additional opportunity to present a newly retained expert at trial if the court excludes the original expert. Margaret A. Berger, Procedural Paradigms for Applying the Daubert Test, 78 Minn. L.Rev. 1345, n. 155, 1375 (1994) citing Tabatchnick v. G.D. Searle & Co., 67 F.R.D. 49 (D.N.J.1975) (refusing to permit testimony by expert retained by plaintiffs after trial began when plaintiffs should have known that testimony by other expert retained prior to trial was insufficient as to causation).

[36] Of course, restrictions on when matters are presented to the trial court may arise from authority other than Rule 13. For example, Rules for District Courts of Oklahoma, 12 O.S. Supp. 2016, Ch. 2, App., Rule 5, Pretrial Proceedings, (C) (Scheduling): ("As soon as any civil case is at issue, the Court may schedule any conference it deems appropriate and enter a scheduling order which establishes, insofar as feasible, the time: . . . 2. to file and hear motions....").

[37] 12 O.S. 2011 § 651(7), note 10 supra.

[38] Savage v. Burton, 2005 OK CIV APP 106, ¶ 13, 125 P.3d 1249, 1253 (published by order of the Court of Civil Appeals), citing Franks v. Nimmo, 796 F.2d 1230 (10th Cir.1986). See also Kutz v. Deere & Co., 2015 OK CIV APP 6, ¶ 9, 342 P.3d 1018, 1021 (published by order of the Court of Civil Appeals) and quoting Tortorelli v. Mercy Health Center, Inc., 2010 OK CIV APP 105, ¶ 30, 242 P.3d 549, 561 (published by order of the Court of Civil Appeals) and citing Ishmael v. Andrew, 2006 OK CIV APP 82, ¶ 16, 137 P.3d 1271, 1276 (published by order of the Court of Civil Appeals).

[39] Compare Grogan v. KOKH, LLC, 2011 OK CIV APP 34, ¶ 18, 256 P.3d 1021, 1030 (Approved for publication by order of the Oklahoma Supreme Court) (a credibility determination is a function of a jury and not a judge, regardless whether the judge is ruling on a motion for summary judgment or for a directed verdict) with Kating v. Municipal Utility Board of Pryor, 1999 OK CIV APP 26, 977 P.2d 1142 (published by order of the Court of Civil Appeals), the court stated some "federal summary judgment standards . . . are not specifically applicable in Oklahoma appellate review of summary judgments." Id. at ¶ 8, 977 P.2d at 1144, citing Weldon v. Dunn, 1998 OK 80, ¶ 22, 962 P.2d 1273, 1283 (Opala, J., dissenting) and opinions from Alabama, California, Indiana, Kentucky, and Texas.

[40] Reeds v. Walker, 2006 OK 43, 157 P.3d 100.

[41] State, ex rel. Pruitt v. Native Wholesale Supply, 2014 OK 49, ¶ 11, 338 P.3d 613, 618.

[42] American Biomedical Group, Inc. v. Techtrol, Inc., 2016 OK 55, ¶ 2, 374 P.3d 820, 822. See also Horton v. Hamilton, 2015 OK 6, ¶ 8, 345 P.3d 357, 360 (summary judgment settles only questions of law).

[43] Samson Investment Co. v. Chevaillier, 1999 OK 19, ¶ 4, 988 P.2d 327, 329.

[44] Christian v. Gray, 2003 OK 10, ¶ 44, 65 P.3d at 609.

[45] Towne v. Hubbard, 2000 OK 3, n. 41, 3 P.3d 154, 163 ("For one to enjoy the opportunity of meaningful appellate review, another stage of proceedings protected by due process, it is essential that the facts relied upon by the trial court appear in a record that is available in one's quest for corrective relief.").

[46] For example, both the United States Court of Appeals for the Seventh and Eight Circuits have upheld a judge's sua sponte Daubert decision. Kirstein v. Parks Corp., 159 F.3d 1065, 1067 (7th Cir.1998) ("we have not required that the Daubert inquiry take any specific form and have, in fact, upheld a judge's sua sponte consideration on the admissibility of expert testimony"), cert. denied, 526 U.S. 1065, 119 S.Ct. 1456, 143 L.Ed.2d 542 (1999), citing O'Conner v. Commonwealth Edison Co., 13 F.3d 1090 (7th Cir.1994); Miller v. Baker Implement Co., 439 F.3d 407, 413 (8th Cir.2006) ("sua sponte consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling").

[47] Covel v. Rodriguez, 2012 OK 5, ¶ 9, 272 P.3d 705, 710 (by failing to make a timely Daubert objection the alleged error was waived on appeal in the absence of fundamental error). Cf. Quite Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1349 (11th Cir. 2003) (a court may decline to consider an untimely Daubert motion); Alfred v. Caterpillar, Inc., 262 F.3d 1083, 1087 (10th Cir.2001) ("[B]ecause Daubert generally contemplates a 'gatekeeping' function, not a 'gotcha' [f]unction, [our caselaw] permits a district court to reject as untimely Daubert motions raised late in the trial process; only in rare circumstances will such tardy motions ... be warranted.").

[48] See discussion herein of Rule 13 (c) and required notice to parties when a Daubert adjudication occurs sua sponte.

[49] Jahn v. Equine Servs., PSC, 233 F.3d 382 (6th Cir. 2000).

[50] Jahn, 233 F.3d at 387.

[51] Day v. State, 2013 OK CR 8, ¶¶ 4-9, 303 P.3d 291, 295-297; Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (A trial judge must possess the discretion to avoid unnecessary "reliability" proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and the discretion to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.).

[52] Jahn, 233 F.3d at 393.

[53] In re Lorice T. Wallace Revocable Trust, 2009 OK 34, ¶ 7, 219 P.3d 536, 538.

[54] Tucker v. Cochran Firm-Criminal Defense Brimingham L.L.C., 2014 OK 112, n. 63, 341 P.3d 673, 688.

[55] Where, on the judgment's reversal, a cause is remanded, it returns to the trial court as if it had never been decided, save only for the settled law of the case. Smedsrud v. Powell, 2002 OK 87, ¶ 13, 61 P.3d 891, 896. A Daubert issue may be raised by a pretrial motion in limine. Christian v. Gray, 2003 OK 10, ¶ 48, 65 P.3d 591, 610. A pretrial motion in limine excluding evidence does not conclusively decide an issue of admissibility because the issue must be raised during a subsequent trial. Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc., 1985 OK 66, 713 P.2d 572, 579 (party aggrieved by an order in limine should raise the issue at the appropriate time during the trial, either by objecting when the challenged evidence or testimony is admitted or by making an offer of proof of the excluded matter); Badillo v. Mid Century Ins. Co., 2005 OK 48, n. 16, 121 P.3d 1080, 1103 (same).

 

 

Wyrick, J., concurring in judgment:

¶1 Briana Andrews was born with a shoulder injury that has left her with permanent, debilitating nerve damage. Briana's parents brought suit alleging that Briana's injury was caused by the negligence of the medical professionals who delivered her. They claim the doctor negligently delivered Briana using techniques that injured her shoulder, and that Mercy Hospital's nurses negligently administered too much of a labor-inducing drug, causing intense contractions that contributed to the injury.

¶2 The district court concluded that the Andrews lacked evidence that Mercy's nurses had contributed to Briana's injury, and accordingly granted summary judgment in favor of Mercy. The Andrews appealed, and we directed them to show cause why the order granting summary judgment was immediately appealable, given that it resolved fewer than all the claims in the case. After both parties responded urging us to assume jurisdiction over the case, the majority concludes that we have jurisdiction because the claim against the nurses arises out of a different "transaction or occurrence" than the claim against the doctor.

¶3 I agree that we have jurisdiction to hear the appeal, but not because the claim against the Mercy nurses and the claim against the doctor arise out of different transactions or occurrences. They do not. Rather, we have jurisdiction because the decision being appealed resolved all claims against Mercy and is therefore a "final judgment" appealable pursuant to 12 O.S. § 994.[1] I write separately to explain why the transaction-or-occurrence test is no longer determinative of our authority to hear an appeal like this.

¶4 I also write separately because I disagree with the majority's conclusion that the district court erred in granting summary judgment without considering the testimony of an expert witness whose testimony was excluded after a Daubert objection. This conclusion is both unnecessary to the judgment and incorrect. The district court's exclusion of the expert's testimony may have been procedurally unusual, but it was not legally deficient.

I.

¶5 Where a final judgment, decree, or final order has been entered resolving one but fewer than all claims or parties, the district court has authority to certify the decision for immediate appeal under 12 O.S. § 994(A). Here, judgment has been entered for Mercy, and the district court has made the requisite certifications, but our precedent requires that we satisfy ourselves that certification was appropriate.[2] This inquiry has two components. First, we review de novo whether the "final judgment" is in fact a judgment.[3] Second, we review for abuse of discretion the district court's certification that there is "no just reason for delay" of the appeal.[4]

¶6 As to whether a "judgment" exists, prior to the enactment of § 994,[5] we looked to see whether the lower court's decision actually resolved an "entire cause of action,"[6] which we determined by looking to see whether it resolved all claims arising "from the same transaction or occurrence."[7] This was true even where a decision resolved all claims against one of multiple parties.

¶7 For example, in Patmon v. Block,[8] we examined a case not dissimilar to this one under the law as it existed prior to the statute. There, a patient brought suit against both her doctors and the hospital, alleging that the doctors committed malpractice and that the hospital negligently hired and credentialed its staff. When summary judgment was entered for the hospital, resolving all claims against it, on appeal we inquired into whether the claims against the hospital arose from the same transaction or occurrence as the claims against the doctors, concluding that the claims were "clearly distinct causes of action founded on separate consecutive rather than concurring transactions or wrongs."[9] Plainly, "cause of action" was defined not by parties, but by the origin of the claims.[10]

¶8 The enactment of § 994's predecessor, 12 O.S.1991 § 1006, changed this. The Bar Committee's comment to the new statute specifically noted that, "[w]here there are multiple parties and a claim as to one of them has been fully adjudicated, the court may direct the filing of a separate judgment under subsection (A) as to that party although the claims by or against the other parties arose out of the same transaction or occurrence."[11] This was a sea change with respect to our jurisdictional analysis. In a case like this one, we no longer needed to look beyond the final judgment, decree, or final order to satisfy ourselves that an entire cause of action has been resolved, i.e., by applying the transaction-or-occurrence test. We instead needed only to review the district court's discretionary call as to the appropriateness of immediate review.[12] This is because what used to be "non-final adjudications" over which we lacked jurisdiction--i.e., those decisions resolving all claims against a party, but not an entire "cause of action"--were now considered "final judgments" over which we have jurisdiction.[13] As a result, in the years since the enactment of the statute, we have consistently viewed a judgment that resolves all claims against a party as final and appealable, and we have not typically inquired in such cases as to whether the claims against that party arose out of the same transaction or occurrence as claims that remained pending against other parties.[14]

 

¶9 Because the summary judgment in this case resolved all claims against Mercy and can thus qualify as a "final judgment" for purposes of § 994, all we need to do is ensure the district court did not abuse its discretion in finding "no just cause for delay." To do so, we look to "1) the interrelationship or overlap among the various legal and factual issues involved in the advanced and pending claims; and 2) the equities and efficiencies implicated by the requested piecemeal review."[15] Given that the district court and all parties are of the opinion that the litigation is best served by an immediate appeal of the judgment against Mercy, and given that the time has passed to concern ourselves with conserving judicial resources by avoiding piecemeal appeals, I cannot say that the district court abused its discretion in concluding that there was "no just cause for delay" of the appeal. Thus, I agree with the majority's conclusion that the appeal can proceed.

¶10 I note, however, that the transaction-or-occurrence test under § 994 has confused litigants and judges for as long as we have imposed it--probably because it does not obviously flow from the text of § 994.[16] This case presented us with an opportunity to unmuddy the waters, but I fear we have done the opposite by (1) insisting that the transaction-or-occurrence test applies, and (2) concluding that the test is satisfied when, under the plain meaning of "transaction or occurrence," the claim against Mercy and the claim against the doctor arise out of the same transaction or occurrence: the delivery of Briana Andrews.

¶11 The verbal gymnastics the parties employ in order to deny the common origin for these claims illustrate the point. Mercy divides the occurrence into two parts: (1) everything that occurred prior to the "crowning" stage of delivery, and (2) everything that happened after[17]--a splitting of hairs that renders the transaction-or-occurrence test virtually meaningless. The Andrews, meanwhile, concede an "overlap" in the time periods giving rise to their suit, admitting that both the claim against the doctor and the claim against Mercy relate to what happened during the delivery,[18] but argue that they are nonetheless distinct enough for individual appeal because they involve different defendants and different standards of care--i.e., different theories of recovery.[19] The Andrews conclude that "[a]ny appearance that the claims on appeal and the allegations against the physician defendant arise from the same transaction or occurrence is perfunctory, and simply the produce of chronology and location."[20] But a "transaction or occurrence" is nothing if not some series of events demarcated by time and place.[21]

¶12 In sum, the claim against Mercy arises from the same transaction or occurrence as the claim still pending against the doctor, but that does not mean the judgment in Mercy's favor is unappealable. The judgment is appealable because it is a final judgment within the meaning of § 994 and there is no just reason to delay our review.

II.

¶13 I also write separately to address the majority's decision to fault the district court for the sequence in which it memorialized its decisions on Mercy's motion for summary judgment and Daubert motion. Because the testimony of the non-excluded expert witnesses was enough to preclude summary judgment in Mercy's favor,[22] there is no need to reach the issue of whether the district court erred in not considering the testimony of the excluded expert witness. In any event, the district court's decision to exclude that expert's testimony was not procedurally deficient.

¶14 First, while it may well be that a trial court "commits reversible error by making a sua sponte Daubert decision as a basis for granting summary judgment without notice to a party that the party's testimony is subject to being excluded as part of that adjudication,"[23] that is not what happened here. The district court's decision on the Daubert issue was not sua sponte,[24] but rather the product of a fully briefed and ripe-for-decision Daubert motion. The Andrews had notice that the admissibility of their expert opinion on causation was being challenged and that it might be excluded from consideration at the summary judgment stage. Mercy, in fact, originally moved for summary judgment and raised its Daubert objection in a single filing, putting the Andrews on notice that Mercy's request for summary judgment turned in part on the admissibility of the challenged expert's testimony.[25] The Andrews then responded to Mercy's Daubert motion, did so prior to the court deciding the motion for summary judgment,[26] and in their response explicitly acknowledged the intertwined nature of the two motions:

Plaintiffs incorporate by reference herein, Plaintiffs' Response and Objection to Defendant Mercy's Motion for Summary Judgment, as many of the same issues raised in this Motion mirror that of Defendant's Motion for Summary Judgment.[27]

The Andrews were thus fully on notice that the admissibility of their expert's testimony was integral to the district court's decision on Mercy's motion for summary judgment, and they fully participated in the adjudication of the Daubert motion. The district court's Daubert decision was thus anything but sua sponte.[28]

¶15 Second, the majority departs from our usual practice of giving trial judges the benefit of the doubt in matters of procedural regularity.[29] In a typical case, we presume "that a trial court's decision is correct and the proceedings are regular,"[30] that the trial court "acted properly and did all that was necessary to sustain the proceedings,"[31] and that the trial court "found every special thing necessary to be found" in order to arrive at its conclusion.[32] The majority affords the district court none of these presumptions.

 

¶16 For example, when analyzing the trial court's initial summary judgment order, the majority offers two plausible interpretations: either the court considered the expert's testimony but failed to appreciate its import under the proper causation standard, or the court made a "sua sponte Daubert assessment" to exclude the expert testimony.[33] But the trial court's order can be read a third way: the court--after receiving and reviewing the briefs of both parties on both summary judgment and the Daubert objection--granted both motions simultaneously, excluding the expert's testimony and concluding that the remaining evidence was insufficient to create a fact dispute as to causation. This interpretation does not have to be correct; it merely has to be plausible.[34] And plausible it is. Read that way, any concerns about the ordering of the district court's decisions disappear because, as explained above, the Andrews were on notice of the Daubert motion and fully briefed their objection to its granting,[35] and the district court was under no obligation to hold a Daubert hearing prior to granting the motion.[36]

¶17 Lastly, because the majority does not address the merits of the district court's Daubert decision, but rather merely finds it procedurally deficient, the excluded expert's testimony will remain excluded on remand. I thus struggle to find the utility of the majority's expenditure of substantial judicial resources to provide pronouncements that are neither necessary to its judgment nor destined to alter the course of the litigation below.

 

***

¶18 For these reasons, I concur in the judgment only.

FOOTNOTES

[1] See 12 Okla. Stat. Ann. § 1006 (West Supp. 1991) Bar Committee's cmt. ("Where there are multiple parties and a claim as to one of them has been fully adjudicated, the court may direct the filing of a separate judgment under subsection (A) as to that party although the claims by or against the other parties arose out of the same transaction or occurrence."). Section 994 was originally 12 O.S. § 1006 and was renumbered as § 994 in 1993. Act of June 10, 1993, ch. 351, § 30, 1993 O.S.L. 2031, 2053.

[2] Okla. City Urban Renewal Auth. v. City of Oklahoma City, 2005 OK 2, ¶ 12, 110 P.3d 550, 558, as corrected on denial of reh'g (Mar. 28, 2005) ("[A]n appellate court is not required to accept a trial court's direction for entry of judgment.").

[3] Id. ¶ 12 n.24, 110 P.3d at 558 n.24. In other words, whether there is a "final judgment, decree, or final order" is the jurisdictional question, and we review such questions de novo. See 12 O.S. § 952 (outlining this Court's appellate jurisdiction); Reeds v. Walker, 2006 OK 43, ¶ 10, 157 P.3d 100, 107 (defining the standard of review for jurisdictional questions).

[4] Okla. City Urban Renewal Auth., 2005 OK 2, ¶ 12, 110 P.3d at 558 (in certifying that a decision is ready for appeal, "[t]he trial court is required to balance judicial administrative interests and relevant equitable concerns" and "[o]ur review of the trial court's evaluation is for an abuse of discretion.").

[5] Section 994 was originally numbered as 12 O.S. § 1006. See supra note 1.

[6] Mann v. State Farm Mut. Auto. Ins. Co., 1983 OK 84, ¶ 11, 669 P.2d 768, 771.

[7] Id. ¶ 13, 669 P.2d at 772 ("Oklahoma has adopted the general rule that a cause of action includes all theories of recovery or types of damages stemming from one occurrence or transaction . . . .").

[8] 1993 OK 53, 851 P.2d 539.

[9] Id. ¶ 5, 851 P.2d at 542.

[10] Id. ¶ 5 n.11, 851 P.2d at 542 n.11 (noting that prior to the enactment of Section 1006, "where interrelated claims are left pending, summary judgment for less than all of the defendants is not an appealable event.").

[11] 12 Okla. Stat. Ann. § 1006 (West Supp. 1991) Bar Committee's cmt. (emphasis added).

[12] See 12 O.S. § 994 ("[T]he court may direct the preparation and filing of a final judgment, decree, or final order as to one of more but fewer than all of the claims or parties . . . ." (emphasis added)); 12 Okla. Stat. Ann. § 1006 (West Supp. 1991) Bar Committee's cmt. ("[T]he court may direct the filing of a separate judgment under subsection (A) as to that party although the claims by or against the other parties arose out of the same transaction or occurrence," but "where the claims arose out of the same transaction or occurrence, the trial court might well exercise its discretion to decide that an appeal should be delayed until all the claims are adjudicated so that the appellate court would not have to review the same case more than once.").

[13] 12 O.S. § 994; 12 Okla. Stat. Ann. § 1006 (West Supp. 1991) Bar Committee's cmt.

[14] E.g., Jennings v. Badgett, 2010 OK 7, 230 P.3d 861; Schovanec v. Archdiocese of Okla. City, 2008 OK 70, 188 P.3d 158; Binder v. Shepard's Inc., 2006 OK 17, 133 P.3d 276; Daniels v. Union Baptist Ass'n, 2001 OK 63, 55 P.3d 1012; Lykins v. Saint Francis Hosp., Inc., 1995 OK 135, 917 P.2d 1; Anderson v. Eichner, 1994 OK 136, 890 P.2d 1329.

[15] Okla. City Urban Renewal Auth., 2005 OK 2, ¶ 17, 110 P.3d at 560.

[16] Section 994's expansive language authorizes a district court to carve out distinct claims--as opposed to causes of action--and certify them for appeal, no matter whether the claim is "a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved." Section 994 thus can be read to expand the class of judgments subject to review beyond just those which we defined as appealable prior to the enactment of the statute--i.e., to include judgments resolving some but not all claims arising out of a cause of action, even where there is but a single defendant in the case--and that is the way federal courts have interpreted § 994's federal analogue, Fed. R. Civ. P. 54(b). See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 433-35 (1956).

[17] Appellee's Supp. Br. 4.

[18] Appellants' Supp. Br. 4.

[19] Id. at 10. Earlier in their brief, however, the Andrews cite Retherford v. Halliburton Co., 1977 OK 178, 572 P.2d 966, and Rodgers v. Higgins, 1993 OK 45, 871 P.2d 398, both of which stand for the proposition that no matter how many theories of liability appear from a single harm, they all arise from a single transaction or occurrence. See Rodgers, 1993 OK 45, ¶ 4, 871 P.2d at 402-03 ("Oklahoma jurisprudence utilizes the transactional approach for its definition of a 'cause of action.' Although different theories of liability may be pressed in support of each claim, only a single cause of action can ordinarily be predicated upon one occurrence or transaction."); Retherford, 1977 OK 178, ¶¶ 11, 572 P.2d at 968-69 ("[A] single wrong gives rise to one cause of action for which one suit may be maintained to recover all damages which had then accrued because of the commission of such wrong, however numerous the elements or items of damage resulting therefrom." (internal marks omitted)).

[20] Appellants' Supp. Br. 12 (emphasis added).

[21] See Black's Law Dictionary 1107 (7th ed. 1999) (defining "occurrence" as "[s]omething that happens or takes place; specif., an accident, event, or continuing condition that results in personal injury or property damage that is neither expected nor intended from the standpoint of an insured party"); Webster's New International Dictionary 1684 (2d ed. 1959) (defining "occurrence" as "3. Any incident or event"); Id. at 885 (defining "event" as "1. The fact of taking place or occurring; . . . 2. That which comes, arrives, or happens").

[22] Majority Op. ¶¶ 31-33.

[23] Id. ¶ 35.

[24] Even if it were, there is no per se bar to a trial court making evidentiary rulings sua sponte. See id. ¶ 35 n.46. Trial courts in fact have an obligation to examine the admissibility of expert testimony and exclude that which is not reliable. Worsham v. Nix, 2006 OK 67, ¶ 37, 145 P.3d 1055, 1068.

[25] See ROA, Doc. 11, p.15 (Docket Sheet for Case No. CJ-2009-10713, Defendant Mercy Health Center, Inc.'s Daubert Motion and Motion for Summary Judgment (filed Feb. 5, 2015)); see also Majority Op. ¶ 28 (noting that Mercy's amended motion for summary judgment also references and relies on its Daubert motion in arguing that it was entitled to judgment as a matter of law).

[26] See ROA, Doc. 11, p.18 (Docket Sheet for Case No. CJ-2009-10713, Plaintiffs' Objection and Response to Defendant Mercy's Amended Daubert Motion Regarding M.M., R.N. (filed Apr. 15, 2015)).

[27] Pls.' Objection & Resp. to Def. Mercy's Am. Daubert Mot. Regarding M.M., R.N. 4 (filed Apr. 15, 2015).

[28] When at the April 24th hearing the Andrews' counsel was offered the opportunity to provide additional argument to the district court, he declined, choosing to rest on the briefing. Majority Op. ¶ 4. Thus, the Andrews were deprived of nothing--nothing at all--by the district court's exclusion of their expert prior to that hearing. This should be reason enough for us to ignore any perceived error on appeal. See 12 O.S. § 78 ("The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."); id. § 2104(A) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected"); Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 47, 121 P.3d 1080, 1098-99 ("A judgment is not subject to reversal for error in the rejection of evidence unless it appears from review of the whole record that the error has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right." (internal marks omitted)).

[29] Willis v. Sequoyah House, Inc., 2008 OK 87, ¶ 15, 194 P.3d 1285, 1290 ("A trial judge's decision comes to a court of review clothed with a presumption of correctness.").

[30] F.D.I.C. v. Jernigan, 1995 OK 54, ¶ 8 n.13, 901 P.2d 793, 796 n.13.

[31] Armstrong v. Gill, 1964 OK 88, ¶ 8, 392 P.2d 737, 738.

[32] KMC Leasing, Inc. v. Rockwell-Standard Corp., 2000 OK 51, ¶ 13, 9 P.3d 683, 688-89 (quoting Monarch Ins. Co. of Ohio v. Rippy, 1962 OK 6, ¶ 11, 369 P.2d 622, 625).

[33] Majority Op. ¶¶ 34-35.

[34] See Jernigan, 1995 OK 54, ¶ 8 n.13, 901 P.2d at 796 n.13 ("On appeal we indulge in the presumption that a trial court's decision is correct and the proceedings are regular."); Boorigie v. Boyd, 1914 OK 77, ¶ 2, 139 P. 253, 253-54 ("We must presume, in the absence of a contrary showing, that the court's proceedings were regular."); see also Willis, 2008 OK 87, ¶ 15, 194 P.3d at 1290 (noting that the party seeking to overturn a decision bears the burden of "overcoming the law's presumption of correctness"); Kahre v. Kahre, 1995 OK 133, ¶ 45, 916 P.2d 1355, 1365 ("Before any claimed error concerning the admission or exclusion of evidence will be deemed reversible error, an affirmative showing of prejudicial error must be made.").

[35] See supra ¶ 14.

[36] Majority Op. ¶ 37 (citing Day v. State, 2013 OK CR 8, ¶¶ 4-9, 303 P.3d 291, 295-97; Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999)).

 

 

 

 

 

 

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2013 OK CR 8, 303 P.3d 291, DAY v. STATE
Discussed at Length
 1947 OK CR 1, 176 P.2d 508, 83 Okl.Cr. 280, Ex parte Harris
Discussed
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2005 OK CIV APP 106, 125 P.3d 1249, SAVAGE v. BURTON
Discussed
 2006 OK CIV APP 82, 137 P.3d 1271, ISHMAEL v. ANDREW
Discussed
 2010 OK CIV APP 1, 225 P.3d 820, MURPHY v. MURPHY
Discussed
 2010 OK CIV APP 105, 242 P.3d 549, TORTORELLI v. MERCY HEALTH CENTER, INC.
Discussed
 2011 OK CIV APP 34, 256 P.3d 1021, GROGAN v. KOKH, LLC
Discussed
 2015 OK CIV APP 6, 342 P.3d 1018, KUTZ v. DEERE & COMPANY
Discussed
 1999 OK CIV APP 26, 977 P.2d 1142, 70 OBJ 1271, Kating v. Municipal Utility Board of Pryor
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 70, 727 P.2d 1361, 57 OBJ 2883, Salyer v. National Trailer Convoy, Inc.
Discussed
 1987 OK 17, 734 P.2d 1292, State ex rel. Oklahoma Bar Ass'n v. Cantrell
Discussed
 1993 OK 45, 871 P.2d 398, 64 OBJ 1255, Rodgers v. Higgins
Discussed at Length
 1993 OK 53, 851 P.2d 539, 64 OBJ 1350, Patmon v. Block
Discussed
 1914 OK 77, 139 P. 253, 41 Okla. 550, BOORIGIE v. BOYD
Discussed
 1994 OK 136, 890 P.2d 1329, 65 OBJ 4037, Anderson v. Eichner
Discussed
 2001 OK 63, 55 P.3d 1012, 72 OBJ 1973, DANIELS v. UNION BAPTIST ASSN.
Discussed
 1962 OK 6, 369 P.2d 622, MONARCH INSURANCE COMPANY OF OHIO v. RIPPY
Discussed
 1964 OK 88, 392 P.2d 737, ARMSTRONG v. GILL
Discussed
 1995 OK 54, 901 P.2d 793, 66 OBJ 1849, F.D.I.C. v. Jernigan
Discussed at Length
 1995 OK 61, 898 P.2d 732, 66 OBJ 1982, Stork v. Stork
Discussed
 1995 OK 133, 916 P.2d 1355, 66 OBJ 3771, Kahre v. Kahre
Discussed
 1995 OK 135, 917 P.2d 1, 66 OBJ 3840, Lykins v. Saint Francis Hospital, Inc.
Discussed
 2002 OK 87, 61 P.3d 891, SMEDSRUD v. POWELL
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed at Length
 2005 OK 2, 110 P.3d 550, OKLAHOMA CITY URBAN RENEWAL AUTHORITY v. CITY OF OKLAHOMA CITY
Discussed at Length
 2005 OK 13, 109 P.3d 345, CASEY v. CASEY
Discussed
 1996 OK 10, 912 P.2d 836, 67 OBJ 382, Liberty Bank and Trust Co. of Oklahoma City, N.A. v. Rogalin
Discussed
 2005 OK 48, 121 P.3d 1080, BADILLO v. MID CENTURY INSURANCE COMPANY
Discussed at Length
 2006 OK 17, 133 P.3d 276, BINDER v. SHEPARD'S INC.
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed at Length
 2006 OK 67, 145 P.3d 1055, WORSHAM v. NIX
Discussed at Length
 1996 OK 64, 919 P.2d 1, 67 OBJ 1830, Ellison v. Ellison
Discussed
 1996 OK 73, 918 P.2d 1388, 67 OBJ 2060, LCR, Inc. v. Linwood Properties
Discussed at Length
 2007 OK 57, 193 P.3d 964, HOUSE v. TOWN OF DICKSON
Discussed
 2008 OK 70, 188 P.3d 158, SCHOVANEC v. ARCHDIOCESE OF OKLAHOMA CITY
Discussed
 2008 OK 87, 194 P.3d 1285, WILLIS v. SEQUOYAH HOUSE, INC.
Discussed at Length
 2009 OK 34, 219 P.3d 536, IN RE: WALLACE REVOCABLE TRUST
Discussed
 2009 OK 86, 222 P.3d 966, COLLIER v. REESE
Cited
 2009 OK 91, 227 P.3d 1060, POWERS v. DISTRICT COURT OF TULSA COUNTY
Discussed
 2010 OK 7, 230 P.3d 861, JENNINGS v. BADGETT
Discussed
 2011 OK 1, 250 P.3d 305, CITY OF BROKEN ARROW v. BASS PRO OUTDOOR WORLD, L.L.C.
Discussed
 2012 OK 5, 272 P.3d 705, COVEL v. RODRIGUEZ
Discussed
 1976 OK 72, 554 P.2d 780, WEEKS v. WEDGEWOOD VILLAGE, INC.
Discussed
 2014 OK 42, 328 P.3d 1192, SMITH v. CITY OF STILLWATER
Discussed
 2014 OK 49, 338 P.3d 613, STATE ex rel. PRUITT v. NATIVE WHOLESALE SUPPLY
Discussed
 2014 OK 56, 335 P.3d 779, IN THE MATTER OF THE GUARDIANSHIP OF BERRY
Discussed
 2014 OK 112, 341 P.3d 673, TUCKER v. THE COCHRAN FIRM-CRIMINAL DEFENSE BIRMINGHAM L.L.C.
Discussed
 2015 OK 6, 345 P.3d 357, HORTON v. HAMILTON
Discussed
 1977 OK 178, 572 P.2d 966, RETHERFORD v. HALLIBURTON CO.
Discussed at Length
 2016 OK 55, 374 P.3d 820, AMERICAN BIOMEDICAL GROUP, INC. v. TECHTROL, INC.
Discussed
 1978 OK 90, 583 P.2d 500, CULPEPPER v. LLOYD
Discussed
 1980 OK 122, 615 P.2d 300, Chemco Products, Inc. v. Moley Produce Co., Inc.
Discussed
 1979 OK 171, 604 P.2d 373, REAMS v. TULSA CABLE TELEVISION, INC.
Discussed at Length
 2000 OK 3, 999 P.2d 438, 71 OBJ 121, Boren v. Thompson & Associates
Cited
 2000 OK 5, 995 P.2d 1141, 71 OBJ 398, Slagell v. Slagell
Discussed
 2000 OK 30, 3 P.3d 154, 71 OBJ 960, Towne v. Hubbard
Cited
 1981 OK 4, 623 P.2d 606, Cartwright v. Atlas Chemical Industries, Inc.
Discussed
 1925 OK 937, 241 P. 476, 115 Okla. 40, HARRISON v. HARMAN
Discussed
 1981 OK 46, 629 P.2d 357, Yery v. Yery
Discussed
 1982 OK 46, 645 P.2d 496, Hamid v. Sew Original
Discussed
 1998 OK 80, 962 P.2d 1273, 69 OBJ 2630, Weldon v. Dunn
Discussed
 1998 OK 127, 975 P.2d 889, 70 OBJ 34, Martin v. Johnson
Discussed
 1999 OK 19, 988 P.2d 327, 70 OBJ 859, Samson Investment Co. v. Chevaillier
Discussed
 2000 OK 51, 9 P.3d 683, 71 OBJ 1763, KMC Leasing Inc. v. Rockwell-Standard Corp.
Discussed
 1983 OK 84, 669 P.2d 768, Mann v. State Farm Mut. Auto. Ins. Co.
Discussed
 1985 OK 25, 698 P.2d 17, Frey v. Independence Fire and Cas. Co.
Discussed
 1985 OK 66, 713 P.2d 572, 56 OBJ 1795, Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc.
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 78, Court to Disregard Insignificant Errors
Cited
 12 O.S. 317, Repealed
Discussed
 12 O.S. 651, New Trial - Definition - Causes for
Discussed at Length
 12 O.S. 653, Time for Filing Application for New Trial
Cited
 12 O.S. 696.2, Judgment, Decree or Appealable Order to be Written - Preparation of Written Documents - Filing - Mailing - Effect
Cited
 12 O.S. 952, Jurisdiction of Supreme Court
Discussed
 12 O.S. 991, Right to Perfect Appeal to Supreme Court without Filing Motion for New Trial - Exemption
Discussed at Length
 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Discussed at Length
 12 O.S. 1006, Renumbered as 12 O.S. § 994 by Laws 1993, HB 1468, c. 351, § 30, eff. October 1, 1993
Discussed at Length
 12 O.S. 1031, District Court, Power to Vacate or Modify its Judgments, When
Discussed at Length
 12 O.S. 1031.1, Authorization to Correct, Open, Modify or Vacate Judgments - Time - Notice - Costs
Discussed
 12 O.S. 2016, Pretrial Procedure - Formulating Issues
Cited